# Richmond

ENLOW & SON, INCORPORATED, LEWIS K. KESSER AND R. A. EMANUEL-
SON V. L. HAROLD HIGGERSON AND IVAN HIGGERSON, PARTNERS TRAD-
ING AS HIGGERSON BROTHERS.

April 25, 1960.

Record No. 5069.

Present, All the Justices.

The opinion states the case.

*Louis B. Fine, Jerrold G. Weinberg* and *Gordon E. Campbell* (*Fine, Fine, Legum, Weinberg & Schwan,* on brief), for the appellants.

*Richard B. Kellam* and *James N. Garrett* (*Kellam & Kellam,* on brief), for the appellees.

EGGLESTON, C. J., delivered the opinion of the court.

L. Harold Higgerson and Ivan Higgerson, partners trading as Higgerson Brothers and sometimes hereafter referred to as the plaintiffs, filed a motion for judgment against Enlow & Son, Incorporated, Lewis K. Kesser and R. A. Emanuelson, sometimes hereinafter referred to as the defendants, to recover damages for the breach of a written contract dated July 1, 1955, whereby it was alleged that Enlow, as principal, and Kesser and Emanuelson, as sureties, were bound to the plaintiffs for the performance of certain construction work on a portion of a state highway running through the city of Portsmouth. After demurrers had been overruled and the

defendants had answered and filed a counterclaim, on their motion the case was transferred to the equity side of the court. The evidence was heard by a commissioner who filed a report holding that the defendants were indebted to the plaintiffs under the provisions of the contract in the sum of $25,701.82, and disallowing the counterclaim. The amount which the commissioner found to be due included the cost of completing the project and a guaranteed profit of $3,000 claimed under the terms of the contract. From a decree overruling the defendants' exceptions to the report and entering judgment thereon, they have appealed.

The factual background is this: On June 6, 1955, the State Highway Department entered into a contract with T. E. Ritter Corporation for the construction of a highway between High Street and Gosport Road in the city of Portsmouth. Ritter sublet a part of the work to Higgerson Brothers. Higgerson Brothers, being desirous of subcontracting the work which they had undertaken, began negotiations with Enlow to undertake this work. There was a conference between L. Harold Higgerson, on the one hand, and Herman A. Enlow, Lewis K. Kesser and R. A. Emanuelson, the principal officers of Enlow & Son, Incorporated, in Kesser's office. After some discussion the contract which is copied in the margin[1] was written by Kesser, a member of the local bar, and executed by the parties.

[1] "THIS AGREEMENT, Made this 1st day of July, 1955 by and between ENLOW AND SON, INCORPORATED, party of the first part and Ivan Higgerson and Harold Higgerson, partners, trading as HIGGERSON BROTHERS, party of the second part.

"WITNESSETH: That it is mutually agreed between the parties hereto as follows:

"1. That the said Enlow and Son, Incorporated agrees to perform all the work specified in 'STATE PROJECT 1864-70-72 B.P.R. A.U.—119 (1)' a bid obtained and awarded to Higgerson Brothers by T. E. Ritter Corporation.

"2. That Higgerson Brothers agree to furnish all material for the job, make the payroll as it becomes due, furnish the bonds, insurances and indemnities requested in the bid of the above project and charge the same to Enlow and Son, Incorporated.

"3. That Higgerson Brothers shall receive the sum of $6,000 for their part of the monies to be received under the terms of this bid from T. E. Ritter Corporation, over and above the expenses it may incur by reason of the above items in paragraph 2 and any other item agreed upon. Higgerson Brothers shall discount the purchases in order to obtain discounts and these discounts received shall be divided equally between Higgerson Brothers and Enlow and Son, Incorporated over and above the $6,000 noted herein. However, if in the event there is not a net profit at the termination of the work under this bid in the amount of $6,000 or over, then, in that event, the sum to be received by Higgerson Brothers shall be the sum of $3,000 and this amount is to be received by them notwithstanding any eventuality.

"4. The Enlow and Son, Incorporated and Higgerson Brothers shall open an account with the main office of the National Bank of Commerce of Norfolk, Vir-

At the time the contract was entered into Higgerson Brothers had been duly licensed and issued a certificate of registration as a contractor under the provisions of Code, § 54-113 *ff*. When the question arose as to whether Enlow & Son, Incorporated, was similarly registered, Enlow and Kesser assured Higgerson that application had been made for such registration and that the proper certificate would be obtained. It later developed that while Kesser had made application for registration on June 21, 1955, action on the application was deferred until October 20, when it was approved and a certificate issued.

Pursuant to the terms of the agreement, Enlow promptly began work on the project and continued with it until March 30, 1956, when work had to be suspended until certain paving had been done by Ritter Corporation, the principal contractor. This paving was completed the latter part of June, at which time it was in order for Enlow to resume work on the project. Although the project was about 90% completed, Enlow refused to resume work. At the

ginia, under the style of 'ENLOW-HIGGERSON' upon which amounts received under the terms of this bid to Higgerson Brothers shall be deposited; that withdrawals shall be made for materials, payrolls or other expenses, when such funds are available; that the withdrawals shall be by the signatures of H. A. Enlow and Harold Higgerson jointly. There shall be no withdrawals for any purpose of anything other than expenses and accounts payable under or incurred under this bid work.

"5. Higgerson Brothers shall obtain all the insurances noted in the instructions dated June 27, 1955 from T. E. Ritter Corporation and these items are to be an expense of Enlow and Son, Incorporated and shall save both of the parties hereto harmless for these items.

"6. As a further provision of surety, the undersigned, R. A. Emanuelson and Lewis K. Kesser do sign this agreement with the express stipulation that they together with Enlow and Son, Incorporated will save Higgerson Brothers harmless from all claims, liabilities not covered by the insurances noted to be obtained in paragraph 5.

"7. Enlow and Son, Incorporated will furnish all the required statements, reports and payroll data as noted in the award letter of T. E. Ritter Corporation dated June 27, 1955.

"WITNESS the following signatures and sales

"ENLOW AND SON, INCORPORATED

"By      H. A. Enlow     (SEAL)

President

"R. A. Emanuelson

"Lewis K. Kesser

"HIGGERSON BROTHERS

"By      Harold Higgerson     (SEAL)"

trial Enlow undertook to justify its refusal by saying that Higgerson Brothers had refused to continue advancing payrolls on the job, as required by the terms of the written contract. Higgerson Brothers, on the other hand, contended that Enlow quit the work because it was not profitable and Enlow had other work it preferred to do. At any rate, on July 2, Higgerson Brothers wrote Enlow calling upon the latter to complete the project and saying that unless it did so, Higgerson Brothers would have the work completed at the cost of Enlow. When Enlow still refused to resume work Higgerson Brothers employed other contractors to complete the work.

The evidence accepted by the commissioner and the lower court is that the cost of completing the project was fair and reasonable and no serious contention to the contrary is advanced before us.

The main contention of the defendants is that the plaintiffs' claim "is barred" because the contract upon which it is based was entered into in violation of Code, § 54-113 ff. The argument of the defendants runs thus: at the time the contract was executed, on July 1, 1955, Enlow & Son, Incorporated, had not been licensed as required by Code, § 54-113 ff., and the plaintiffs knew this; Code, § 54-128, made it unlawful for Enlow, while unlicensed, to undertake this work, and Section 54-142, as amended, made it unlawful for the plaintiffs "knowingly" to receive or consider Enlow's bid to do the work; the registration and procurement of the license by Enlow subsequent to the execution of the contract did not remove the invalidity of the agreement, and hence the plaintiff's claim under the contract is barred. The defendants further say that the present case is not controlled by *Cohen* v. *Mayflower Corp.*, 196 Va. 1153, 86 S. E. 2d 860, because in that case the plaintiff was an innocent party to the agreement in that he did not know that the defendant was unlicensed, whereas here the plaintiffs knew that Enlow was unlicensed and hence are in *pari delicto* with the latter.

We agree with the position of the defendants that if the agreement was invalid and unenforceable at the time of its execution it was not validated by the subsequent registration and procurement of a license by Enlow, in the absence of a statutory provision to that effect. See Corbin on Contracts, Vol. 6, § 1532, p. 1043; 53 C. J. S., Licenses, § 59-a, p. 714; Annotation, 118 A.L.R. 646, p. 659. *Cf.*, *Bain* v. *Boykin*, 180 Va. 259, 23 S. E. 2d 127.

But we do not agree with the contention that the parties are in *pari delicto* and for that reason the agreement is not enforceable by the plaintiffs. This contention overlooks the force and effect

of the 1956 amendment to Code, § 54-142. As amended by the Acts of 1956, ch. 397, p. 450, the section reads:

"§ 54-142. Any person not being duly authorized who shall contract for or bid upon the construction of any of the projects or works or any part thereof enumerated in § 54-113, without having first complied with the provisions hereof, or who shall attempt to practice general contracting or subcontracting in this State, except as provided for in this chapter, and any person presenting or attempting to file as his own the registration certificate of another or who shall give false or forged evidence of any kind to the Board or to any member thereof in maintaining a certificate of registration or who falsely shall impersonate another or who shall use an expired or revoked certificate, and any awarding authority, who knowingly receives or considers a bid from anyone not properly registered under this chapter, shall be deemed guilty of a misdemeanor.

"Provided that no person shall be entitled to assert this section as a defense to any action at law or suit in equity unless such person shall first affirmatively prove that notice of this section, prior to or upon the execution of the contract, has been given to the party who seeks to recover from such person.

"*Provided, further, that nothing herein contained shall affect any contract entered into prior to July 1, 1956.*" (Italics supplied.)

Prior to the amendment, which added the last two paragraphs to the section, both the person contracting for and bidding upon a construction contract without having procured the required license, and one "who knowingly receives or considers a bid" from such unlicensed person, were guilty of a misdemeanor. The effect of the last paragraph added by the amendment is to remove the applicability of the section to the contract here involved which was "entered into prior to July 1, 1956."

At the oral argument before us counsel for the defendants argued that the last paragraph is intended to apply only to the next preceding paragraph which was likewise added by the amendment. But no such limitation is found in the language used.

While the amendment removed the prohibition against the plaintiffs' receiving and accepting Enlow's bid on July 1, 1955, it left unimpaired the provision in Code, § 54-128,[2] making it unlawful

---

[2] "§ 54-128. *Necessity for license and certificate of registration.*—It shall be unlawful for any person to engage in, or offer to engage in, general contracting or subcontracting in this State, unless he has been duly licensed and issued a certificate of registration under the provisions of this chapter."

for an unlicensed person "to engage in, * * * general contracting or subcontracting in this State." Thus the parties to the present agreement are not in *pari delicto*.

Since the amendment to the section affected the remedy and not the vested rights of the parties it was constitutionally valid. Upon this principle, in *Bain* v. *Boykin, supra,* 180 Va. 259, 23 S. E. 2d 127, we upheld the constitutional validity of an amendment, operating retroactively, to the statute requiring the registration of one conducting a business under a fictitious name (Code, § 59-169 *ff.*), the effect of which amendment was to remove what would otherwise have been a bar to the prosecution of the suit.

Nor is the plaintiffs' right to enforce the contract barred because they knew at the time of its execution that Enlow had not been licensed as required by the statute. As is aptly said in Corbin on Contracts, Vol. 6, § 1540, p. 1070:

"If a bargain is illegal, not because a performance promised under it is an illegal performance, but only because the party promising it is forbidden by statute or ordinance to do so, the prohibition is aimed at that party only and he is the only wrongdoer. The performance itself is not even *malum prohibitum,* much less is it *malum in se.* The other party, being himself subject to no prohibition or penalty, may even be one of the class of persons for whose protection the prohibitory statute was enacted.

"In these cases the refusal of all remedy against a party to the illegal bargain would penalize the very persons for whose benefit the making of such a bargain is prohibited or declared illegal. * * *"

See also, Restatement of the Law, Contracts, Vol. 2, § 601, p. 1116; 12 Am. Jur., Contracts, §§ 217, 218, pp. 734-736; Pomeroy's Equity Jurisprudence, 5th Ed., Vol. 3, § 942-c, pp. 745, 747; *Lewis & Queen* v. *N. M. Ball Sons,* 48 Cal. 2d 141, 308 P. 2d 713, 720; *Fergus County* v. *Osweiler,* 107 Mont. 466, 86 P. 2d 410, 120 A. L. R. 1457.

In *Waller* v. *Eanes' Adm'r,* 156 Va. 389, 394, 157 S. E. 721, we held that equitable relief will not be denied to a party less guilty in degree than the other, or if public policy would be promoted by granting him relief.

As we pointed out in *Bowen Electric Co.* v. *Foley,* 194 Va. 92, 72 S. E. 2d 388, the purpose of the statute requiring registration of contractors (Code, § 54-113 *ff.*) is to protect the public from inexperienced, unscrupulous, irresponsible, or incompetent contractors.

Public policy requires that a contract entered into by an unlicensed contractor be deemed illegal, not because of the subject matter, but because of the fault of the contractor in failing to comply with the statute. (*Cohen* v. *Mayflower Corp.*, *supra*, 196 Va., at page 1161, 86 S. E. 2d, at page 864.) He is primarily the guilty party. To deny an unlicensed contractor the right to enforce his contract will effectuate the purposes of the statute. On the other hand, to deny relief to a licensed contractor who has entered into a contract with an unlicensed contractor will not further the purposes of the statute but will benefit the primary wrongdoer.

Upon these principles, we hold that the plaintiffs' right to maintain this action against Enlow & Son, Incorporated, the principal defendant, is not barred. Similarly, their right against those who as sureties have guaranteed the performance of the agreement is not barred. *Cohen* v. *Mayflower Corp.*, *supra* 196 Va., at page 1163, 86 S. E. 2d, at pages 865, 866.

The next contention of the defendants, as we understand it, is that the contract of July 1, 1955, was not intended as a performance agreement whereby Enlow, as principal, and Kesser and Emanuelson, as sureties, were bound to perform the construction work therein mentioned; that under the terms of the contract Higgerson Brothers were to bear all losses, furnish all materials, payrolls, insurance and bonds required on the work, and if the project turned out to be profitable Higgerson Brothers were to receive $6,000 out of the profits, and if it proved unprofitable they were to be paid $3,000 by Enlow to apply on their losses. Moreover, the defendants, Kesser and Emanuelson, say that they were not bound, as sureties, to pay the item of $3,000.

These contentions are entirely without merit. The evidence shows without dispute that Higgerson Brothers had entered into a contract with Ritter Corporation to perform certain construction work which they desired to sublet to Enlow. The agreement, drawn and executed for this purpose, is not clearly phrased and much of the evidence adduced on both sides is for the avowed purpose of clarifying the ambiguities therein. Since the agreement was written by Kesser, counsel for himself, Enlow and Emanuelson, any ambiguities therein, not clarified by the evidence, must be construed against them and in favor of Higgerson Brothers.

The first paragraph provides: "That the said Enlow and Son, Incorporated agrees to perform all the work specified in 'STATE

PROJECT 1864-70-72 B.P.R. A.U.—119 (1)' a bid obtained and awarded to Higgerson Brothers by T. E. Ritter Corporation." This was a clear promise by Enlow to perform the work. While under paragraph 2 Higgerson Brothers agreed to furnish the materials, payrolls, bonds, etc., required on the project, they were to "charge the same to Enlow and Son, Incorporated." Similarly, under paragraph 5, while Higgerson Brothers were to obtain all the necessary insurance, "these items are to be an expense of Enlow and Son, Incorporated." This, too, indicated that Enlow was the underlying promisor in the undertaking.

Under paragraph 6, "As a further provision of surety," that is, in addition to their other obligations, Kesser and Emanuelson agreed "that they together with Enlow and Son, Incorporated will save Higgerson Brothers harmless from all claims, liabilities not covered" by the required insurance. The parties, of course, knew that Higgerson Brothers were still liable for the performance of their contract with Ritter Corporation. Consequently, it was the purpose of this paragraph that Kesser and Emanuelson guarantee the performance of the work which had been undertaken by Enlow and save Higgerson Brothers "harmless from all claims" which might arise against them if the work was not properly done, as well as all "liabilities not covered" by the required insurance. Higgerson testified that the parties so agreed at the time the contract was entered into.

Under paragraph 3, if the project turned out to be profitable, Higgerson Brothers were to receive $6,000 out of the profits. But it was further provided that they were to receive $3,000 "notwithstanding any eventuality," that is, that they would receive this amount as a guaranteed profit.

That Kesser and Emanuelson, as sureties, intended to guarantee the payment of this latter item is shown by their own testimony, coupled with the language of the instrument. Both testified that at the time the contract was being formulated it was agreed that they would guarantee the payment of the sum of $3,000 by Enlow. As Emanuelson expressed it, "Kesser and I guaranteed Enlow & Son would pay it. * * * We backed the Enlow Corporation to that extent." It is true that the guarantors further testified that Higgerson Brothers were to receive that amount only if they absorbed all losses on the project. But the testimony of Higgerson, accepted by the commissioner and the lower court, is to the contrary. Moreover, the language in the written agreement that Higgerson Brothers were to

receive this amount "notwithstanding any eventuality," clearly negatives the contention that they were to absorb all losses and supports their claim that they were to receive this sum as a guaranteed profit.

The evidence fully supports the finding of the commissioner that each of the items mentioned in his report was a claim asserted against and paid by Higgerson Brothers and chargeable to Enlow and its sureties, Kesser and Emanuelson. Since the venture turned out not to be profitable, the commissioner properly held that the plaintiffs were entitled to recover of the defendants the stipulated guaranteed profit of $3,000.

■ The defendants next say that the plaintiffs' claim is barred because, in violation of the terms of the agreement, the plaintiffs refused to advance the necessary payrolls on December 8, 1955, February 24 and April 12, 1956, respectively, and Enlow was required to advance money for these purposes. This contention is likewise without merit.

According to the evidence on behalf of the plaintiffs, which the commissioner and the lower court have accepted, when it was not convenient for the plaintiffs to make these particular advances and they so told Enlow, the latter voluntarily made them. After the first two advances Enlow continued with the work, thereby showing that it did not regard the plaintiffs' failure as a breach of the agreement. While no work was done by Enlow on the project after April 12, 1956, the date of its last payroll advance, there was at that time no claim that this was a breach of the agreement. These circumstances confirm the position of the plaintiffs that these three advances were voluntarily made by Enlow at the request of the plaintiffs.

The evidence further shows that Enlow was reimbursed for the first two of these advances out of the Enlow-Higgerson construction fund. While it is not clear from the record whether Enlow was reimbursed for the last advance payment made on April 12, 1956, this is immaterial because under the second paragraph of the agreement such advances, if made by Higgerson Brothers, were ultimately chargeable to Enlow.

■ The final contention of the defendants is that they are entitled to a credit of $23,315 for the rental value of certain equipment owned by them and used on the project. When the defendants offered evidence that prior to the execution of the written agreement the parties verbally agreed that Enlow was to be paid this rental, it was objected to on the ground that it was an attempt to vary the terms

of the written agreement which contained no such provision. This should have ended the matter. But aside from this, Higgerson Brothers emphatically denied any such agreement and the commissioner and the lower court have accepted their version of the matter. Hence, on either of these grounds, the lower court was right in rejecting the counterclaim.

On the whole we find no error in the decree appealed from, and it is

*Affirmed.*