COITE P. BRADY, D/B/A BRADY BUILDING COMPANY v. EDWIN M. FULGHUM, JR. AND WIFE, PATRICIA M. FULGHUM

No. 286A83

(Filed 3 November 1983)

**1. Contracts § 6.1— unlicensed general contractor—doctrine of "substantial compliance" rejected**

The doctrine of "substantial compliance" with the general contractor's licensing statutes is rejected by the Supreme Court. G.S. 87-1; G.S. 87-13.

**2. Contracts § 6.1— unlicensed general contractor—inability to enforce construction contract**

A contract illegally entered into by an unlicensed general construction contractor in unenforceable by the contractor and cannot be validated by the contractor's subsequent procurement of a license. Neither may the contractor recover for extras, additions or changes made during construction commenced pursuant to the contract.

**3. Contracts § 6.1— enforcement of construction contract against unlicensed contractor**

Parties not regulated by the general contractor's licensing statutes may enforce a construction contract against an unlicensed contractor.

**4. Contracts § 6.1— expiration of construction contractor's license—recovery permitted**

If a licensed contractor's license expires, for whatever reason, during construction, he may recover for only the work performed while he was duly licensed. If the contractor renews his license during construction, he may recover for work performed before expiration and after renewal.

**5. Contracts § 6.1— construction contract—contractor unlicensed when contract entered—inability to enforce contract**

Plaintiff construction contractor was not entitled to recover under a contract to construct a house for defendants for $106,850.00 or for extras in construction allegedly requested by defendants where plaintiff was unlicensed at the time he negotiated and contracted with defendants to construct their house.

APPEAL by plaintiff from a decision by a divided panel of the Court of Appeals, 62 N.C. App. 99, 302 S.E. 2d 4 (1983), affirming summary judgment dismissing plaintiff's cause of action.

*Raymer, Lewis, Eisele, Patterson & Ashburn by Douglas G. Eisele, for plaintiff appellant.*

*Aimee A. Toth and Edwin A. Pressly for defendant appellees.*

EXUM, Justice.

Plaintiff brought this action for monies allegedly due under a contract for construction of a private dwelling. In affirming summary judgment for defendants, the Court of Appeals concluded that plaintiff, a general contractor, had not complied "substantially" with the statutory licensing requirements. *See* N.C. Gen. Stat. §§ 87-1 to 87-15.2 (1981). We agree with the result reached by the Court of Appeals, but we reject the substantial compliance doctrine which that court has developed in earlier licensing cases and which formed the basis of its analysis in this case.

### I.

In February 1980, plaintiff agreed with defendants by written contract to construct their house for a price of approximately $106,850. Plaintiff began construction on or about 13 March 1980. Neither during the negotiation of this contract nor when he began performance was plaintiff licensed as a general contractor as required by North Carolina law. N.C. Gen. Stat. § 87-13 (1981) (making it a misdemeanor for one to undertake work as a general contractor without having first obtained a license). *See id.* § 87-1 (defining anyone who undertakes to bid upon or construct a building the cost of which is $30,000 or more as a general contractor). Plaintiff was awarded his builder's license on 22 October 1980, having passed the examination on his second attempt. At that time, he had completed two-thirds of the work on defendant's house. Defendants paid plaintiff $104,000. Plaintiff by this action seeks an additional $2,850 on the original contract and $28,926.41 for "additions and changes" requested by defendants during construction.

From an adverse decision on defendants' motion for summary judgment, plaintiff appealed. The North Carolina Court of Appeals affirmed. A majority of that court, after reviewing its cases which had developed the substantial compliance doctrine, concluded that plaintiff was not entitled to the benefit of the doctrine. Chief Judge Vaughn, dissenting, concluded that he was.

### II.

The legislature has provided a mechanism for certification of general construction contractors. N.C. Gen. Stat. § 87-1 (1981). This process, anchored by the provision that a general contrac-

tor's failure to procure a license constitutes a misdemeanor, *id.* § 87-13, protects the public by insuring confidence and integrity within the construction industry. *Builders Supply v. Midyette,* 274 N.C. 264, 270, 162 S.E. 2d 507, 512-13 (1968). Although the statute does not expressly preclude an unlicensed contractor's suit against an owner for breach of contract, *Midyette* held the contractor may not recover on the contract or in *quantum meruit* when he has ignored the protective statute.

After *Midyette* the Court of Appeals determined several cases, including the one at bar, in terms of whether the contractor had "substantially" complied with the licensing statutes. In *Holland v. Walden,* 11 N.C. App. 281, 181 S.E. 2d 197, *disc. rev. denied,* 279 N.C. 349, 182 S.E. 2d 581 (1971), the general contractor was not licensed at the time the contract to build defendant's house was made nor when construction commenced some six weeks later. The contractor finally obtained a license two months after construction began and held a valid license during the remainder of the twenty-one month construction period. The Court of Appeals concluded that since the contractor held a license for 88 percent of the construction time, the contractor had "substantially complied" with the licensing statute; therefore defendants could not rely on the fact that the contractor was not licensed as a defense. *Id.* at 285, 181 S.E. 2d at 200.

In *Barrett, Robert and Woods, Inc. v. Armi,* 59 N.C. App. 134, 296 S.E. 2d 10, *disc. rev. denied,* 307 N.C. 269, 299 S.E. 2d 214 (1982), the contractor was duly licensed at the time the construction contract was executed. Three and a half months later the license expired and was not renewed until some eight months later. Approximately 90 percent of the work was done while the contractor was unlicensed. Nevertheless, the Court of Appeals concluded that the contractor had substantially complied with the licensing statute. *Id.* at 140, 296 S.E. 2d at 14. The Court of Appeals, rejecting the contractor's contention that mere possession of a valid license at the time of contracting always constitutes substantial compliance, said,

> We stated in our opinion in *Construction Co. v. Anderson* [5 N.C. App. 12, 168 S.E. 2d 18 (1969)] that the time of entering the contract is of great significance since that is the time when the owner must decide whether the contractor is suffi-

Brady v. Fulghum

ciently competent to perform the work. Nevertheless we decline to hold, and the facts of this case do not require that we decide, that mere possession of a valid license at the moment of contracting, regardless of what transpires thereafter with regard to the license, constitutes 'substantial compliance' with the licensing statute.

Article I of chapter 87 clearly contemplates that a contractor should be licensed at the time of contracting and during the construction period.

*Id.* at 139, 296 S.E. 2d at 14. The Court of Appeals found substantial compliance in *Armi* essentially because the contractor was licensed "at the significant moment of contracting"; the contractor's license lapsed during construction "through inadvertence, not as a result of incompetence or disciplinary action by the licensing board; . . . [and] was renewed immediately upon . . . filing of a renewal application and fees"; and the contractor's financial condition and construction personnel "remained unchanged during the period plaintiff was not licensed."

[1]   The Court of Appeals analyzed the instant case in terms of whether plaintiff substantially complied with the licensing requirement. A majority of the panel concluded that because he did not have a license at the time the contract was made and "was not licensed during at least 66 percent of the construction, which comprised the major portion of the work," plaintiff had not substantially complied with the licensing requirements of the statute. Chief Judge Vaughn dissented on the ground that under *Armi* substantial compliance existed. The division on the Court of Appeals in this case demonstrates that the doctrine of substantial compliance is sometimes difficult to apply. By generating skewed results, it leaves uncertain the rights of parties which tends to promote litigation. We now reject the doctrine and end its application in this state.

Generally, contracts entered into by unlicensed construction contractors, in violation of a statute passed for the protection of the public, are unenforceable by the contractor. *Olsen v. Reese*, 114 Utah 411, 416, 200 P. 2d 733, 736 (1948). A majority of the jurisdictions adhere to this interpretation. *See* Annot., 82 A.L.R. 2d 1429 (1962). Reading these statutes as being designed to protect the public from irresponsible contractors, *Meridian Corp. v.*

*McGlynn/Garmaker Co.*, 567 P. 2d 1110 (Utah 1977), most state courts find "no legal remedy for that which is illegal itself." *D & L Harrod, Inc. v. United States Precast Corp.*, 322 So. 2d 630, 631 (Fla. Dist. Ct. App. 1975). General contractors have been precluded from maintaining actions if they must rely on their illegal act to justify their recovery. *Kaiser v. Thomson*, 55 N.M. 270, 274, 232 P. 2d 142, 144 (1951). The unenforceability of such contracts by the contractor stems directly from their conception in the contractor's illegal act.

The express language of the North Carolina licensing statute indicates that it is designed to insure competence within the construction industry. The statute requires

> an examination . . . of all applicants for license to ascertain the ability of the applicant to make a practical application of his knowledge of the profession of contracting, under the classification contained in the application, and to ascertain the qualifications of the applicant in reading plans and specifications, knowledge of estimating costs, construction, ethics and other similar matters pertaining to the contracting business and knowledge of the applicant as to the responsibilities of a contractor to the public and of the requirements of the laws of the state of North Carolina relating to contractors, construction and liens.

N.C. Gen. Stat. § 87-10. By requiring this examination, the legislature seeks to guarantee "skill, training and ability to accomplish such construction in a safe and workmanlike fashion." *Arnold Construction Company, Inc. v. Arizona Board of Regents*, 109 Ariz. 495, 498, 512 P. 2d 1229, 1232 (1973). In tandem, these requirements "protect members of the general public *without regard to the impact upon individual contractors.*" *Urbatec v. Yuma County*, 614 F. 2d 1216, 1218 (9th Cir.) (applying Arizona law), *cert. denied*, 449 U.S. 841 (1980) (emphasis added).

In examining the licensing statute in question, we recognize the distinction between legislation designed to produce revenue and to protect the public. In the former situation, the legislature exercises its taxing authority. In the latter, it exercises its police power. Accordingly, when a legislature invokes its police power to provide statutory protection to the public from fraud, incompetence, and irresponsibility, as ours has done with the con-

tractor licensing statutes, courts impose greater penalties on violators. 6A A. Corbin, Corbin on Contracts § 1512 (1962). Making contracts unenforceable by the violating contractor produces "a salutary effect in causing obedience to the licensing statute." *Id.* These public policy considerations militate against permitting unlicensed general construction contractors to enforce their contracts. Denying the contractor the right to enforce his contract effectuates the statutory purpose and legislative intent of providing the public with optimum protection. *Enlow and Son, Inc. v. Higgerson,* 201 Va. 780, 787, 113 S.E. 2d 855, 860 (1960).

[1]  In recognition of the essential illegality of an unlicensed contractor's entering into a construction contract for which a license is required and in order to give full effect to the legislative intent to furnish protection to the public by strict licensing requirements, we reject the doctrine of substantial compliance, cognizant that harsh consequences may sometimes fall on those who do contracting work without a license. *Schlicht v. Curtin,* 117 Ariz. 30, 31-32, 570 P. 2d 801, 803 (Ariz. App. 1977).

We do recognize the minority rule, adhered to by our Court of Appeals, is not without some support. California applies the doctrine of substantial compliance in certain cases to avoid unnecessarily harsh results on unlicensed contractors who perform well. *Latipac, Inc. v. The Superior Court of Marin County,* 64 Cal. 2d 278, 281, 49 Cal. Rptr. 676, 679, 411 P. 2d 564, 567 (1966). *See Michigan Roofing and Sheet Metal, Inc. v. Dufty Road Properties,* 90 Mich. App. 732, 282 N.W. 2d 809 (1979) (adopting the California standard). *Accord Murphy v. Campbell Investment Co.,* 79 Wash. 2d 417, 486 P. 2d 1080 (1971). The leading California case, however, noted a critical factual element which is not present in the case at bar. "The key moment of time when the existence of the license becomes determinative is the time when the other party to the agreement must decide whether the contractor possesses the requisite responsibility and competence and whether he should, in the first instance, enter into the relationship." *Latipac,* 64 Cal. 2d at 282, 49 Cal. Rptr. at 680, 411 P. 2d at 568. Since in *Latipac* the contractor had a valid license at the moment the parties entered into the contractual arrangement, the purpose of the statute was fulfilled. Essentially, the person entering into a contract with the contractor could be assured of his responsibility

and competence because he was licensed when the contract was signed.

[2-4] We agree that the existence of a license at the time the contract is signed is determinative and attach "great weight to the significant moment of the entrance of the parties into the relationship." *Id.* Accordingly, we adopt the rule that a contract illegally entered into by an unlicensed general construction contractor is unenforceable by the contractor. It cannot be validated by the contractor's subsequent procurement of a license. *See Enlow,* 201 Va. at 784, 113 S.E. 2d at 859. In this circumstance there can be no substantial compliance with the licensing statutes. Neither may the contractor recover for extras, additions or changes made during construction commenced pursuant to the contract. Such a contract is not, however, void. Others not regulated by the licensing statutes passed for their protection do not act illegally in becoming parties to such a contract. The policy underlying the licensing statutes would not be served by preventing enforcement by those for whose protection the statutes were passed. These parties may enforce the contract against the unlicensed contractor. *Midyette,* 274 N.C. at 270-71, 162 S.E. 2d at 511. Further, if a licensed contractor's license expires, for whatever reason, during construction, he may recover for only the work performed while he was duly licensed. If, in that situation, the contractor renews his license during construction, he may recover for work performed before expiration and after renewal. If, by virtue of these rules, harsh results fall upon unlicensed contractors who violate our statutes, the contractors themselves bear both the responsibility and the blame.

[5] Plaintiff was unlicensed at the time he negotiated and contracted with defendants to construct their house. He illegally entered into the contract; it is, therefore, unenforceable by him. His subsequent procurement of a valid license cannot validate or make legal that which was illegal in its inception. Accordingly, we modify the reasoning of the Court of Appeals and affirm its decision upholding the trial court's grant of defendants' motion for summary judgment.

Modified and affirmed.