IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1089

Filed: 31 December 2020

Wake County, No. 18-CVS-5113

WRIGHT CONSTRUCTION SERVICES, INC., Plaintiff,

v.

THE HARD ART STUDIO, PLLC, GEORGE W. CARTER, JR., COLLINS STRUCTURAL CONSULTING, PLLC, and SCOTT A. COLLINS, Defendants.

Appeal by plaintiff from order entered 19 June 2019 by Judge G. Bryan Collins, Jr., in Wake County Superior Court. Heard in the Court of Appeals 20 October 2020.

> *Poyner Spruill LLP, by Matthew C. Bouchard and Benjamin T. Buskirk, for plaintiff-appellant.*
>
> *Gallivan, White & Boyd, P.A., by James M. Dedman, IV, and Tyler L. Martin, for defendants-appellees The Hard Art Studio, PLLC and George W. Carter, Jr.*
>
> *Allen, Moore & Rogers, LLP, by Joseph C. Moore, III, and Warren Hynson, for defendants-appellees Collins Structural Consulting, PLLC and Scott A. Collins.*

DIETZ, Judge.

In North Carolina, architects and engineers performing work on a construction project owe a duty of care to those who reasonably rely on their work, including the builder on the project. This duty applies even if the architect was hired by the property owner and has no other business relationship with the builder. An architect who breaches this duty—for example, by failing to exercise due care when developing

an architectural plan—can be sued for negligence by the builder.

The plaintiff in this case is a builder relying on this negligence claim to sue a group of architects and engineers who worked on a failed construction project. Those defendants responded by asserting what is called the "licensure defense"—a legal defense stemming from a state law requiring builders to obtain a general contracting license before bidding on any project costing $30,000 or more. The licensure defense prevents a builder from recovering under a construction contract if the builder failed to timely secure the required license.

As explained below, the licensure defense does not apply to these negligence claims. These claims are not contract claims masquerading as tort claims. They exist in our jurisprudence because of the special duties imposed on architects and engineers. Those duties arise because others in the construction industry rely on the knowledge and skill that only these professionals possess. The purpose of the licensure defense—protecting the public from incompetent construction work—would not be served, and indeed would be undermined, if the defense barred claims against architects and engineers who were negligent in their professional work.

We therefore hold that, because of the importance of ensuring architects and engineers exercise due care in their respective professions, a builder's claims for negligence against an architect or engineer for deficient professional work on a construction project are not barred by the builder's failure to secure a general

contracting license before bidding on the project. Accordingly, we reverse the trial court's entry of summary judgment in this case and remand for further proceedings.

**Facts and Procedural History**

In 2014, Hillsborough Lofts, LLC developed plans for a mixed-use retail and student housing complex in Raleigh. Hillsborough Lofts hired Olive Architecture as the architect for the project. Olive Architecture contracted with Defendants Collins Structural Consulting and Scott A. Collins to provide structural engineering work and other services. Hillsborough Lofts later directed Olive Architecture to solicit bids for a general contractor to take over the project.

Plaintiff Wright Construction Services, Inc. submitted a bid for the project. During the initial call meeting, Hillsborough Lofts explained that it needed to complete the project by August 2015. Wright Construction indicated that it could complete the work by that date but also informed Hillsborough Lofts that it was not yet licensed to engage in general contracting in North Carolina. Nevertheless, recognizing the tight timeline for the project and corresponding construction loans, the parties signed a contract before Wright Construction had a general contracting license. The government issued Wright Construction an unlimited general contracting license a few months later.

In May 2015, Hillsborough Lofts terminated Olive Architecture for failure to substantially perform the terms of the parties' contract and hired Defendant The

Hard Art Studio, PLLC to take over. As with Olive Architecture before it, Hard Art Studio entered into a contract with Collins Structural Consulting for structural engineering and other services.

Both before and after Hillsborough Lofts hired Hard Art Studio, the project was plagued by delays, including problems with the construction set of drawings, the unexpected discovery of an underground storage tank in the building footprint, and issues with obtaining constructible designs for shaft walls and shear walls.

On 26 August 2015, Hard Art Studio acknowledged numerous design issues that were preventing Wright Construction from completing construction. The firm made a "strong recommendation that we stop work until ALL the design issues are worked out or at a minimum extend the schedule to reasonably address the issues noted." Later that year, Hillsborough Lofts terminated Wright Construction in a letter explaining that Wright Construction failed to complete the work on time.

Hillsborough Lofts and Wright Construction then brought numerous claims and counterclaims against each other in an arbitration proceeding. The defendants in this case—Hard Art Studio, George Carter, Collins Structural Consulting, and Scott Collins—were not named in that arbitration. In August 2017, the arbitrators found that Hillsborough Lofts materially breached the contract by failing to provide Wright Construction with a constructible design, by failing to respond to shop drawings and requests for information, and by interfering with Wright Construction's

work on the project. In November 2018, the arbitrators awarded Wright Construction $1,564,668.32 in damages, and the Wake County Superior Court later entered a judgment confirming that award.

In April 2018, Wright Construction brought this negligence action, alleging that Hard Art Studio, George Carter, Collins Structural Consulting, and Scott Collins breached professional duties of care they owed as architects or structural engineers. The defendants later moved for summary judgment, arguing that the claims were barred by Wright Construction's failure to obtain a general contracting license before beginning work on the project.

After a hearing, the trial court granted summary judgment in favor of all defendants and dismissed Wright Construction's complaint. Wright Construction timely appealed.

## Analysis

Wright Construction appeals the trial court's entry of summary judgment in favor of all defendants. We review this issue *de novo*, examining whether the evidence forecast by the parties shows there is "no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c); *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

The central issue in this appeal is whether Wright Construction's negligence claims are barred by the so-called licensure defense. To evaluate this issue, we first

examine the claims brought by Wright Construction, and then examine the scope of the licensure defense.

The claims alleged by Wright Construction are common law negligence claims. Decades ago, this Court recognized that construction projects in "this commercial age" involve many participants: general contractors, subcontractors, architects, engineers, and so on. *Shoffner Indus., Inc. v. W. B. Lloyd Constr. Co.*, 42 N.C. App. 259, 272, 257 S.E.2d 50, 59 (1979). Some of these participants—architects and engineers in particular—are "professionals" with special knowledge and skill and corresponding professional duties because of that knowledge and skill. *Davidson & Jones, Inc. v. New Hanover Cty.*, 41 N.C. App. 661, 667, 255 S.E.2d 580, 584 (1979).

This, in turn, imposes on an architect or engineer "a duty to those who must reasonably rely upon his professional performance." *Shoffner*, 42 N.C. App. at 271–72, 257 S.E.2d at 59. As is the case with all legal duties, the "violation of that duty is negligence." *Id.* at 265, 257 S.E.2d at 55. So, for example, when a property owner hires an architect to assist with building construction, "a contractor hired by the client to construct a building, although not in privity with the architect, may recover from the architect any extra costs resulting from the architect's negligence." *Id.* at 265–66, 257 S.E.2d at 55.

There are two features of this negligence claim that are critical to its interaction with the licensure defense. First, there is nothing peculiar about these

duties—when this Court first recognized them, we described them as ordinary legal duties arising out of the need for architects and engineers to use due care in the exercise of their skills and abilities to avoid foreseeable harm to others. *Davidson & Jones*, 41 N.C. App. at 667, 255 S.E.2d at 584. Second, these negligence claims are entirely separate from any rights or responsibilities that exist between the property owner and the builder under the construction contract. These are claims "for an economic loss as a result of alleged Property damages" and the legal duty exists because, in the exercise of due care, architects or engineers can ensure that parties who reasonably rely on their work "will not be injured." *Shoffner*, 42 N.C. App. at 271, 257 S.E.2d at 58.

With these principles in mind, we turn to the "licensure defense," a common law doctrine created by our Supreme Court. By statute, a general contractor must obtain a general contracting license before bidding on or working on a construction project costing $30,000 or more. *See* N.C. Gen. Stat. §§ 87-1 *et seq*. In *Bryan Builders Supply v. Midyette*, our Supreme Court explained that this licensing requirement is designed to "protect the public from incompetent builders." 274 N.C. 264, 270, 162 S.E.2d 507, 511 (1968). Thus, the Court reasoned, a contractor who fails to secure the necessary license cannot recover from the property owner for breach of contract:

> When, in disregard of such a protective statute, an unlicensed person contracts with an owner to erect a building costing more than the minimum sum specified in the statute, he may not recover for the owner's breach of

that contract. This is true even though the statute does not
expressly forbid such suits.

*Id.*

In short, the licensure defense states that "contracts entered into by unlicensed construction contractors, in violation of a statute passed for the protection of the public, are unenforceable by the contractor." *Brady v. Fulghum*, 309 N.C. 580, 583, 308 S.E.2d 327, 330 (1983). "The unenforceability of such contracts by the contractor stems directly from their conception in the contractor's illegal act." *Id.* at 584, 308 S.E.2d at 330.

Having examined the legal underpinning of the negligence claims in this case and the common law licensure defense, we can now address the dispositive question presented in this appeal: does the licensure defense bar negligence claims by an unlicensed general contractor against architects or engineers who breached their duty of care in their professional work on a construction project?

We hold that the licensure defense does not apply to these negligence claims. First, and most importantly, the purpose of the licensure defense is to protect *the public* from incompetent work on construction projects. *Bryan Builders Supply*, 274 N.C. at 270, 162 S.E.2d at 511. Applying the licensure defense to these types of tort claims would undermine this purpose—it would shield architects and engineers from legal responsibility for their failure to exercise due care in critical aspects of the construction process. The public gains nothing from barring the claims; only the

tortfeasor benefits.

We see nothing in our State's licensure defense precedent—all of which deals with contract claims—that would justify applying it to excuse the negligent acts of architects and engineers working on the project. Architects and engineers are not part of "the public" when performing their own professional work on a construction project. Thus, they are simply "not among the class of persons the Legislature intended to protect by enactment" of the general contractor licensing statutes. *Vogel v. Reed Supply Co.*, 277 N.C. 119, 133, 177 S.E.2d 273, 282 (1970).

Second, this holding is consistent with the limited set of cases examining the licensure defense outside the context of the contract between the owner and the general contractor. For example, in *Vogel*, the Supreme Court held that, although a general contractor "cannot enforce its contract against the owner by reason of its unlicensed status, it is not precluded on that account from enforcing the subcontract, or recovering damages for breach thereof, against" a subcontractor. *Id.* The Supreme Court reasoned that "no injury to the public is apparent from enforcement of the subcontract between the parties to it." *Id.* at 134, 177 S.E.2d at 282.

Similarly, in *RCDI Constr., Inc. v. Spaceplan/Architecture, Planning & Interiors, P.A.*, a federal district court examined tortious interference and negligence claims brought by an unlicensed general contractor against an architect working on the project. 148 F. Supp. 2d 607, 612–17, 620–22 (W.D.N.C. 2001), *aff'd* 29 F. App'x

120 (4th Cir. 2002). The court held that the tortious interference claim was barred because that claim requires an enforceable contract and the licensure defense rendered the contract unenforceable by the general contractor. *Id.* at 613–17. But the court did not apply the licensure defense to the negligence claim against the architect and instead examined that claim on the merits. *Id.* at 620–21.

Finally, we are not persuaded by Defendants' repeated arguments that our holding will permit general contractors to "end-run" around the licensure defense by suing "non-owner project members in tort to recover damages that would otherwise be barred if brought as a contract claim against an owner." This argument is a reflection of Defendants' unwillingness to see these negligence claims for what they are—claims that they, as architects and engineers, failed to use due care in the exercise of professional knowledge and skill that only they possess. These are not claims that could be "brought as a contract claim against an owner" because the owner (and the public generally) do not have this specialized knowledge and skill and thus cannot have a duty to exercise reasonable care in this context.

So, to be clear, our holding today does not address claims that could be "brought as a contract claim against an owner." Sophisticated construction projects often include many participants, some of whom may be serving in supervisory or monitoring roles. In those roles, they are more akin to administrative agents of the owner than professionals who are using their own special knowledge and skill.

Whether claims against those third parties are barred by the licensure defense is not an issue before this Court today. This case deals exclusively with the common law negligence claims against architects and engineers recognized by our Court in *Shoffner* and *Davidson & Jones*.

Having resolved the central question in this appeal, we decline to address the remaining issues raised in Defendants' briefs, including questions of proximate causation and contributory negligence. Discovery in this case is not complete; the parties apparently agreed to limit discovery to the licensure defense issue, and to present that issue to the trial court for early resolution. Although this Court reviews a grant of summary judgment *de novo*, we are not comfortable ruling on these other, fact-intensive questions when there may be more discovery to be done. We leave it to the trial court, on remand, to manage the discovery process and determine when these other issues are ripe for resolution.

**Conclusion**

We reverse the trial court's order granting summary judgment and remand for further proceedings.

REVERSED AND REMANDED.

Judges BRYANT and HAMPSON concur.