JCG & Assocs., LLC v. Disaster Am. USA, LLC, 2021 NCBC 76.

STATE OF NORTH CAROLINA

BRUNSWICK COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 746

JCG & ASSOCIATES, LLC; MIP 1, LLC; JAMES BONICA; PATRICIA BONICA; and DAVID L. PETERSON, Trustee of the David L. Peterson Living Trust,

    Plaintiffs and Counterclaim Defendants,

v.

DISASTER AMERICA USA, LLC; DA ROOFING SYSTEMS; ESTATE OF DONALD LEE HUSK, by and through KATHLEEN KAREN HUSK as executrix; and JASON HUSK,

    Defendants and Third-Party Plaintiffs,

and

DISASTER AMERICA OF NORTH CAROLINA, LLC,

    Defendant, Counterclaim Plaintiff, and Third-Party Plaintiff,

v.

TERRY WILLIAMS; and AIRWARE TRANSPORTATION AND LOGISTICS, LLC,

    Third-Party Defendants.

**ORDER AND OPINION
ON MOTION FOR PARTIAL
SUMMARY JUDGMENT**

1.    Pending is a motion for partial summary judgment filed by three plaintiffs in this case.  For the following reasons, the Court **GRANTS** the motion in part and **DENIES** it in part.

*Reiss & Nutt, PLLC, by W. Cory Reiss and Kyle J. Nutt, for Plaintiffs JCG & Associates, LLC, MIP 1, LLC, James Bonica, Patricia Bonica, and David L. Peterson, Trustee of the David. L. Peterson Living Trust.*

*Hodges Coxe & Potter, LLP, by Samuel B. Potter and Bradley A. Coxe, for Defendants Disaster America USA, LLC, Disaster America of North Carolina, LLC, DA Roofing Systems, Donald Husk, and Jason Husk.[1]*

*No counsel appeared for Third-Party Defendants Terry Williams and Airware Transportation and Logistics, LLC.*

Conrad, Judge.

## I.
## BACKGROUND

2. The Court does not make findings of fact when ruling on motions for summary judgment. The following background, drawn from the evidence submitted by the parties, is intended only to provide context for the Court's analysis and ruling.

3. This case arises from the aftermath of Hurricane Florence, which devastated parts of the North Carolina coast in September 2018. Among the hardest hit areas was the Village of Bald Head Island. The storm damaged many homes on the island, including those owned by MIP 1, LLC, David Peterson, and James and Patricia Bonica (together, "Homeowners").

4. In October 2018, after the hurricane had passed, the Homeowners engaged Disaster America USA, LLC to repair and restore their homes. (*See* Pls.' Exs. 1–3, ECF Nos. 99.2–99.4.) Disaster America USA—along with its sister companies, Disaster America NC, LLC and DA Roofing Systems—markets itself as an experienced provider of catastrophic remediation and restoration services. Donald Husk was its sole owner and CEO at all relevant times; his son, Jason, was the chief

---

[1] The Court granted leave for Hodges Coxe & Potter, LLP to withdraw after briefing on the motion was complete.

operating officer.  (*See* Dep. D. Husk 19:5–7, ECF No. 99.6; Aff. J. Husk ¶ 2, ECF No. 102.3.)

5.    Disaster America USA is not a licensed general contractor in North Carolina and was not licensed at the time it contracted with the Homeowners.  (*See, e.g.*, 30(b)(6) Dep. Disaster Am. USA 190:4–7, ECF No. 99.5.)  The Husks did not view this as a problem.  According to their deposition testimony, Disaster America USA obtained permission to use the North Carolina license of another general contractor, JCG & Associates, LLC.  (*See, e.g.*, 30(b)(6) Dep. Disaster Am. USA 120:16–24, 216:12–24; Dep. D. Husk 160:25–161:18.)  JCG & Associates—which is undisputedly not a party to any of the contracts—denies giving permission and denies having heard of Disaster America USA at all. (*See* Aff. Greene ¶¶ 9–11, ECF No. 99.34.)  Even so, Disaster America USA named "DISASTER AMERICA USA, LLC/JCG & ASSOCIATES, LLC" as the general contractor in each contract.  (Pls.' Exs. 1–3.) Later, Disaster America USA purported to assign the contracts to Disaster America NC, which obtained a North Carolina general contractor's license in late 2018.  (*See* Dep. D. Husk 144:4–24; Defs.' Ex. 5, ECF No. 102.5.)

6.    The anticipated scope of work was broad.  Disaster America USA was to perform all repair and restoration work for the full scope of the Homeowners' insurance proceeds.  (*See, e.g.*, Pls.' Exs. 1–3.)  According to Jason Husk, the Homeowners "hired us to handle everything" from mitigation to reconstruction. (Dep. J. Husk 137: 9–12, ECF No. 99.24; *see also, e.g.*, Dep. D. Husk 70:8–11, 147:12–19; Dep. J. Husk 177:2–8.)

7.     By spring 2019, the Homeowners had lost faith in Disaster America USA and its capabilities.  They questioned the pace of the restorations, believed that Disaster America USA had overcharged and unnecessarily butted heads with the insurance companies, and accused its workers and subcontractors of damaging parts of the homes that hadn't been damaged by the hurricane.  Frustrated, the Homeowners retained counsel and terminated the contracts.  (*See* Aff. Bonica ¶¶ 15, 17–20, 22, ECF No. 99.49; Aff. Smith ¶¶ 17, 22, 24, ECF No. 99.50; Aff. Peterson ¶¶ 14, 15, ECF No. 99.51.)

8.     This case followed.  The Homeowners have asserted several claims, including negligence, fraud, constructive fraud, unfair or deceptive trade practices under section 75-1.1, and others.  (*See generally* Compl., ECF No. 2; Am. Compl., ECF No. 70.)  In addition, they seek a declaratory judgment that the contracts with Disaster America USA are illegal and unenforceable.  (*See* Compl. ¶¶ 206–10.)  JCG & Associates also joined the suit as a plaintiff, alleging that Disaster America USA had no right to use its name and general contractor's license.  (*See, e.g.*, Compl. ¶¶ 121–35.)  Disaster America NC, as Disaster America USA's assignee, responded with counterclaims for breach of contract and quantum meruit.  (*See generally* Answer to Am. Compl., ECF No. 71.)

9.     In December 2020, while discovery was ongoing, the Homeowners moved for partial summary judgment.  (*See* ECF No. 98.)  Their motion has been fully briefed, but two events have delayed its resolution.  Shortly after the completion of briefing, counsel for all defendants moved to withdraw, which the Court granted.  Then, a few

weeks later, Donald Husk died. His estate has since been substituted as a party in his place. No counsel has appeared, however, on behalf of the estate or any other named defendant (together, "Defendants").

10. Although the Court invited Defendants to suggest a convenient hearing date for the pending motion for summary judgment, they did not respond. The Court therefore elects to decide the motion based on the briefs and supporting materials filed by counsel. *See* BCR 7.4.

## II.
## LEGAL STANDARD

11. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all inferences in its favor. *See Vizant Techs., LLC v. YRC Worldwide, Inc.*, 373 N.C. 549, 556 (2020); *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 365 N.C. 178, 182 (2011).

12. The moving party "bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579 (2002). If the moving party carries this burden, the opposing party "may not rest upon the mere allegations or denials of his pleading," N.C. R. Civ. P. 56(e), but must instead "come forward with specific facts establishing the presence of a genuine factual dispute for trial," *Liberty Mut. Ins. Co.*, 356 N.C. at 579. "An issue is 'genuine'

if it can be proven by substantial evidence and a fact is 'material' if it would constitute or irrevocably establish any material element of a claim or a defense." *Lowe v. Bradford*, 305 N.C. 366, 369 (1982) (quoting *Bone Int'l, Inc. v. Brooks*, 304 N.C. 371, 374–75 (1981)).

13. "When the party with the burden of proof moves for summary judgment, a greater burden must be met." *Almond Grading Co. v. Shaver*, 74 N.C. App. 576, 578 (1985). The movant "must show that there are no genuine issues of fact; that there are no gaps in his proof; that no inferences inconsistent with his recovery arise from the evidence; and that there is no standard that must be applied to the facts by the jury." *Kidd v. Early*, 289 N.C. 343, 370 (1976). For that reason, "rarely is it proper to enter summary judgment in favor of the party having the burden of proof." *Blackwell v. Massey*, 69 N.C. App. 240, 243 (1984); *see also Parks Chevrolet, Inc. v. Watkins*, 74 N.C. App. 719, 721 (1985).

## III.
## ANALYSIS

14. At issue are the Homeowners' claims for declaratory judgment and unfair or deceptive trade practices and Disaster America NC's counterclaims for breach of contract and quantum meruit. Because the arguments directed to the declaratory-judgment claim and the counterclaims are closely tied together, the Court considers them in tandem.[2]

---

[2] In their opposition brief, Defendants object that the motion is premature because it was filed before the end of discovery. Not so. The Rules of Civil Procedure and the case management order in this action do not bar early motions for summary judgment. And in any event, the parties completed discovery well in advance of this opinion, yet Defendants have never asked to supplement the record.

A. Contract Enforceability

15. It is undisputed that Disaster America USA was not a licensed general contractor when it inked contracts with the Homeowners to repair and restore their properties. The Homeowners contend that the contracts are illegal and unenforceable as a result. They seek a declaration to that effect and further contend that Disaster America NC's counterclaims to enforce the contracts necessarily fail.

16. By statute, anyone who makes a contract to perform construction services valued over $30,000 must have a general contractor's license. *See* N.C.G.S. § 87-1. Our Supreme Court has stressed that a "contract illegally entered into by an unlicensed general construction contractor is unenforceable by the contractor." *Brady v. Fulghum*, 309 N.C. 580, 586 (1983). This is an unyielding rule. The contract "cannot be validated by the contractor's subsequent procurement of a license," *id.*, or by partnering with a licensed contractor, *see, e.g.*, *Hawkins v. Holland*, 97 N.C. App. 291, 294 (1990); *Joe Newton, Inc. v. Tull*, 75 N.C. App. 325, 328 (1985). Likewise, assignment to a licensed contractor does not "cure the illegal contract." *Jenco v. Signature Homes, Inc.*, 122 N.C. App. 95, 100 (1996).

17. Under these decisions, the contracts between Disaster America USA and the Homeowners are unenforceable. In each contract, Disaster America USA agreed to perform comprehensive repair and restoration services with a value greater than $30,000. (*See* Pls.' Exs. 1–3; *see also, e.g.*, Pls.' Exs. 40–43, ECF Nos. 99.54–99.57 (addressing cost of services).) Later, Disaster America USA assigned the contracts to Disaster America NC. (*See* Defs.' Ex. 5.) But Defendants concede that Disaster

America USA "was not licensed as a general contractor" when it made the contracts. (Opp'n 7, ECF No. 102; *see also, e.g.*, 30(b)(6) Dep. Disaster America USA 70:22–71:3.) Thus, neither it nor Disaster America NC can enforce them now.

18. Defendants' responses are not persuasive. They argue, first, that Disaster America USA had permission from JCG & Associates to use its license to perform the contracts. Even if true, that is immaterial because the contracting party itself "must be licensed." *Hawkins*, 97 N.C. App. at 294; *see also Joe Newton*, 75 N.C. App. at 328–29. Here, it is undisputed that the Homeowners' contracts are with Disaster America USA, not JCG & Associates.

19. Next, Defendants deny that Disaster America USA needed a license. They contend that the contracts were not for construction services, as defined by section 87-1, and that they performed no such services before the Homeowners terminated the contracts. (*See* Opp'n 7–9.) This contention is meritless.

20. Each contract bears the title "Construction Agreement," states that it is "a construction contract," and contemplates extensive restoration work, including potentially "roof removal, roofing, siding, trim, gutters, awnings, carports, carpentry, and masonry." (Pls.' Exs. 1–3.) Defendants' own witnesses and evidence confirm that Disaster America USA contracted for construction work. (*See, e.g.*, Dep. D. Husk 70:8–11, 147:12–19; Defs.' Ex. 5 at 1 (stating that assigned contracts were for "construction services").) And everything done before the contracts were terminated—demolition, removal, and related preparatory work—was part and parcel of the overall restoration project. Without question, section 87-1 requires a

general contractor's license for home renovation and restoration of this kind. *See Daye v. Roberts*, 89 N.C. App. 344, 346 (1988) ("There is no doubt that plaintiff's work [to restore] defendants' home [after a fire] constituted an 'improvement' under G.S. 87-1."); *Mill-Power Supply Co. v. CVM Assocs.*, 85 N.C. App. 455, 460–61 (1987) ("We find that plaintiff undertook to construct an 'improvement' under G.S. 87-1 by adding a roof over an existing structure."); *Reliable Props., Inc. v. McAllister*, 77 N.C. App. 783, 786 (1985) (requiring license when "renovation included the installation of new roofing, correction of dry rot, installation of new storm doors and windows, and the complete renovation of all apartment interiors; including new paint, wallpaper and carpet").

21. Defendants also argue that they may rely on the contracts, even if unenforceable, for defensive purposes—namely, to offset any damages claimed by the Homeowners. Perhaps that is true, but the Court need not and does not address the issue because the Homeowners have not moved for summary judgment as to any affirmative defense. (*See* Reply Br. 8, ECF No. 107.)

22. In sum, the undisputed evidence shows that the contracts at issue are illegal and unenforceable. The Homeowners are entitled to a declaration saying the same.

23. No further analysis is required for Disaster America NC's counterclaims. "Our Courts have repeatedly held that an unlicensed contractor may not recover on a contract or in *quantum meruit*." *Reliable Props.*, 77 N.C. App. at 785. The Court therefore enters summary judgment in favor of the Homeowners as to the counterclaims as well.

B. Section 75-1.1

24. The Homeowners seek summary judgment as to their claim for unfair or deceptive trade practices under section 75-1.1. This claim, too, is based on Disaster America USA's actions as an unlicensed contractor. Going further, the Homeowners contend that all Defendants are liable on a theory of concerted action.

25. Section 75-1.1 requires a plaintiff to show that "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656 (2001). If the claim stems from an alleged misrepresentation, the plaintiff must "demonstrate reliance on the misrepresentation in order to show the necessary proximate cause." *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 88 (2013).

26. Numerous factual disputes preclude summary judgment. First, the Homeowners argue, in part, that Disaster America USA misrepresented its status as a licensed contractor and impersonated JCG & Associates in violation of N.C.G.S. 87-13. There is evidence, though, that Disaster America USA informed prospective customers that it was unlicensed, telling them that it was instead relying on someone else's license. (*See* 30(b)(6) Dep. Disaster Am. USA 182:24–183:5; Aff. Smith ¶ 9.)

27. Second, whether the Homeowners relied on any alleged misrepresentation is contested. They claim that they would not have hired Disaster America USA had they known that it was unlicensed. (*See* Aff. Bonica ¶ 13; Aff. Smith ¶ 13; Aff. Peterson ¶ 11.) In response, though, Defendants point to evidence that the Homeowners hired Disaster America USA based on referrals from their insurance

adjuster, property manager, or both. (*See, e.g.*, 30(b)(6) Dep. Disaster Am. USA 138:18–140:23, 176:18–177:11; Dep. Hill 119:15–122:2; *see also* Dep. Hill 132:1–18 ("the contract process actually went through Wendy Wilmot's office").) This evidence could support an inference that the Homeowners relied on referrals rather than any representations by Disaster America USA.

28. Third, the evidence of injury is also muddled. The Homeowners claim to have suffered injury due to damage caused by workers and unreasonable delays by Disaster America USA, among other things. These injuries appear to stem from allegedly deficient performance under the contracts. It is less clear whether they were proximately caused by misrepresentations about Disaster America USA's licensing status.

29. Notably, the Homeowners' briefs do not mention, much less satisfy, the higher burden they face when seeking summary judgment on their own claim. The Homeowners have not shown an absence of genuine issues of material fact and that there are no gaps in their proof. The Court therefore denies the Homeowners' motion as to the claim for unfair or deceptive trade practices. *See, e.g.*, *Kidd*, 289 N.C. at 370 ("[I]f the need for cross-examination appears, the court is free to deny the summary judgment motion."); *Blackwell*, 69 N.C. App. at 243 ("[R]arely is it proper to enter summary judgment in favor of the party having the burden of proof.").

IV.
CONCLUSION

30. For all these reasons, the Court **GRANTS** the Homeowners' motion for summary judgment in part and **DENIES** it in part, as follows:

a.    The Court enters judgment in favor of the Homeowners as to their claim for declaratory judgment.    The Court **DECLARES** that Disaster America USA and Disaster America NC may not enforce the contracts at issue, (Pls.' Exs. 1–3).

b.    The Court enters judgment in favor of the Homeowners as to Disaster America NC's counterclaims for breach of contract and quantum meruit. These counterclaims are **DISMISSED** with prejudice.

c.    The Court **DENIES** the motion as to the Homeowners' claim for unfair or deceptive trade practices.    This claim shall proceed to trial.


**SO ORDERED**, this the 9th day of December, 2021.


                /s/ Adam M. Conrad
                Adam M. Conrad
                Special Superior Court Judge
                 for Complex Business Cases