HODGSON CONSTRUCTION, INC., Plaintiff v. RONALD WALLACE HOWARD and wife, SHIRLEY ANN HOWARD, Defendants

No. COA06-1414

(Filed 4 December 2007)

**Construction Claims— limited contractor's license—multiple contracts for one building—judgment notwithstanding the verdict**

The trial court erred when it concluded that the question in this case was exclusively a matter of law and granted judgment notwithstanding the verdict for defendants. Taking all of the evidence which supports the claim as true, and drawing all reasonable inferences in plaintiff's favor, plaintiff did not exceed the scope of its limited general contractor's license in the construction of defendants' house.

Appeal by plaintiff from judgment entered 23 May 2006 by Judge Catherine C. Eagles in Superior Court, Wilkes County. Heard in the Court of Appeals 7 June 2007.

*Vannoy, Colvard, Triplett & Vannoy, P.L.L.C., by Daniel S. Johnson, for plaintiff-appellant.*

*McElwee Firm, PLLC, by John M. Logsdon, for defendant-appellees.*

STROUD, Judge.

Plaintiff appeals from judgment notwithstanding the verdict (JNOV) granted in favor of defendants on the grounds that plaintiff entered into a contract to construct a house for defendants which exceeded the scope of plaintiff's limited general contractor's license.

Because we conclude that the value of the construction of defendants' home did not exceed the scope of plaintiff's limited general contractor's license, we remand for reinstatement of the jury verdict for plaintiff, and entry of judgment for plaintiff.

## I. Background

On 14 March 2005, plaintiff filed a complaint against defendants seeking judgment in the sum of $70,315.92, plus interest accruing after 27 September 2004, as well as costs, expenses, and attorney's fees pursuant to Chapter 44A of the North Carolina General Statutes. Plaintiff also filed a claim of lien upon defendants' real property pursuant to Chapter 44A of the North Carolina General Statutes.

The complaint alleged that plaintiff had entered into three contracts with defendants for the construction of a house upon defendants' real property: (1) a cost-plus contract for the construction of a house foundation ("foundation contract"), (2) a cost-plus contract for installation of framing, trusses, and windows in the same house ("window contract"), and (3) a contract dated 31 May 2004 for construction of the house ("house contract").

The house contract provided for plaintiff to construct a "three level house" with heated space of 3472 square feet, with plaintiff to "furnish material and labor—complete in accordance with the above specifications, for the sum of Three hundred fifty nine thousand, six hundred twenty dollars ($359,620.00)." This stated contract price expressly excluded the foundation work, which had already been completed by plaintiff pursuant to the foundation contract, and "floor and roof trusses, rock labor and rock material, elevator, windows and exterior doors" which defendants were to provide. The house contract also identified various "allowances" in specific amounts and items which were to be "furnished" or "provided by owner."

The complaint finally alleged that plaintiff constructed the house as required by the three contracts but defendants failed to pay all sums owed. Plaintiff sought outstanding balances owed of $61,587.93 on the house contract and of $8,727.99 for the foundation and installation of framing, trusses, and windows, a total of $70,315.92, plus interest and various litigation costs.

On 12 April 2005, defendants filed a motion to dismiss plaintiff's complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), alleging that plaintiff did not possess an intermediate contractor's license as

was required by North Carolina law to be able to enforce the contract to construct defendants' house. On 31 May 2005, plaintiff filed an amended complaint, which contained essentially the same allegations as the original complaint, but also alleged that the house contract provided for allowances of $79,389.00 to be paid for by defendants, making the "actual contract price upon which plaintiff would recover . . . $280,231.00[,]" and seeking the same amounts of damages under each portion of the contract as in the original complaint. On 20 June 2005 the trial court denied the motion to dismiss. Defendants filed their answer on 25 July 2005, alleging that the window contract never existed, and alleging by way of counterclaim that plaintiff had breached the house contract by failing to perform the work in a proper manner and by abandoning construction of the home before completion.[1]

Jury trial began on 8 May 2006 and concluded on 11 May 2006. The jury found that defendants did not breach the foundation contract, but that they did breach the house contract and that plaintiff was entitled to recover damages of $51,000.00. On defendants' counterclaim, the jury found that plaintiff did not breach the contract.

Defendants moved in open court for judgment notwithstanding the verdict pursuant to N.C. Gen. Stat. § 1A-1, Rule 50(b). On 23 May 2006, the trial court entered an order granting defendants' motion for JNOV, finding that the house contract was unenforceable by plaintiff because "the plaintiff acted as a general contractor for a single project with a value in excess of three hundred fifty thousand dollars ($350,000), a project for which the plaintiff was unlicensed" under N.C. Gen. Stat. § 87-10(a). The trial court therefore set aside the jury's verdict as to the $51,000.00 awarded as damages to plaintiff. Plaintiff filed notice of appeal from the order granting judgment notwithstanding the verdict.

---

1. Defendants' answer did not plead plaintiff's limited license as an affirmative defense, and "[f]ailure to be properly licensed is an affirmative defense which ordinarily must be specifically pleaded." *Barrett, Robert & Woods v. Armi*, 59 N.C. App. 134, 137, 296 S.E.2d 10, 13, *disc. review denied*, 307 N.C. 269, 299 S.E.2d 214 (1982). However, defendants did raise this defense in their motion to dismiss, and because defendants submitted affidavits in support of the motion to dismiss, the motion was actually treated as a motion for summary judgment. *Helms v. Holland*, 124 N.C. App. 629, 633, 478 S.E.2d 513, 516 (1996). "[T]he nature of summary judgment procedure (G.S. 1A-1, Rule 56), coupled with our generally liberal rules relating to amendment of pleadings, require that unpleaded affirmative defenses be deemed part of the pleadings where such defenses are raised in a hearing on motion for summary judgment." 59 N.C. App. at 137, 296 S.E.2d at 13 (citation and quotation marks omitted). Therefore defendants' affirmative defense was properly raised to the trial court.

**HODGSON CONSTR., INC. v. HOWARD**

[187 N.C. App. 408 (2007)]

## II. Standard of review

Plaintiff argues that the standard of review for a JNOV is *de novo*. Defendant, citing *Carter v. Foster*, 103 N.C. App. 110, 404 S.E.2d 484 (1991) (holding that the trial court's findings of fact which were supported by competent evidence were conclusive on appeal when the parties waived trial by jury in favor of a bench trial), urges us to consider the trial court's ruling on the JNOV as if it was made at a bench trial and accord deference to factual findings of the trial court which are supported by evidence in the record.

A motion for judgment notwithstanding the verdict

is essentially a renewal of an earlier motion for directed verdict. Accordingly, if the motion for directed verdict could have been properly granted, then the subsequent motion for judgment notwithstanding the verdict should also be granted. In considering any motion for directed verdict [or JNOV], the trial court must view all the evidence that supports the non-movant's claim *as being true* and that evidence must be considered in the light most favorable to the non-movant, giving to the non-movant the benefit of every reasonable inference that may legitimately be drawn from the evidence with contradictions, conflicts, and inconsistencies being resolved in the non-movant's favor. This Court has also held that a motion for judgment notwithstanding the verdict is cautiously and sparingly granted.

*Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 368-69, 329 S.E.2d 333, 337-38 (1985) (internal citations and quotation marks omitted) (emphasis added). "When a judge decides that a directed verdict [or JNOV] is appropriate, actually he is deciding that the question has become one exclusively of law and that the jury has no function to serve." N.C. Gen. Stat. § 1A-1, Rule 50, comment. However, "a genuine issue of fact must be tried by a jury unless this right is waived." *In re Will of Jarvis*, 334 N.C. 140, 143, 430 S.E.2d 922, 923 (1993) (stating the standard of review for a directed verdict).

Since plaintiff did not waive its right to a jury trial, defendants have misplaced their reliance on *Carter* for the proposition that deference is due the trial court's findings of fact in the case *sub judice*. Rather, the trial court's findings of fact and conclusions of law have no legal significance in an order granting JNOV. *Kelly v. Harvester Co.*, 278 N.C. 153, 157, 179 S.E.2d 396, 397 (1971). While findings of fact in a JNOV order may assist this Court in understanding the

reason that the trial judge granted JNOV, *see People's Center, Inc. v. Anderson*, 32 N.C. App. 746, 233 S.E.2d 694 (1977), "our review of [a] motion for judgment notwithstanding the verdict is *de novo* . . . ." *N.C. Indus. Capital, LLC v. Clayton*, 185 N.C. App. 356, 370, 649 S.E.2d 14, 25 (2007). Therefore, "we consider the matter anew and . . . freely substitute our judgment for that of the trial court regardless of whether the trial court made findings of fact and conclusions of law." 185 N.C. App. at 371, 649 S.E.2d at 25 (internal brackets and quotation marks omitted).

In fact, "[t]he standard is high for the party seeking a JNOV: the motion should be denied if there is more than a scintilla of evidence to support the plaintiff's *prima facie* case." *Cox v. Steffes*, 161 N.C. App. 237, 243, 587 S.E.2d 908, 912-13 (2003) (citation, quotation marks and emphasis omitted), *disc. review denied*, 358 N.C. 233, 595 S.E.2d 148 (2004). Furthermore, where as here, a JNOV is granted to the defendants on the grounds of an affirmative defense, it "will be more closely scrutinized." *Bryant*, 313 N.C. at 369, 329 S.E.2d at 338.

In sum, our task is to determine if the trial court correctly concluded that this case is exclusively a matter of law, by which defendants were entitled to prevail. In making this determination, we presume that all evidence supporting plaintiff's claim is true, and draw all inferences arising from the evidence in plaintiff's favor.

### III. Analysis

Plaintiff contends that the trial court erred in granting defendants' motion for JNOV on the grounds that plaintiff was barred from recovery because the stated contract price exceeded $350,000.00, the maximum allowed by plaintiff's limited general contractor's license. Specifically, plaintiff argues that although the stated contract price for which plaintiff agreed to construct defendants' house was $359,620.00, that amount must be reduced by $79,389.00,[2] the sum of the allowances over which defendants retained control and paid for. Plaintiff contends the value of the project was the *net* of the stated contract price and the allowances, $280,231.00, an amount within the scope of plaintiff's limited general contractor's license. Alternatively, plaintiff argues that even if the value of the contract exceeded its license limit, it is still entitled to enforce the contract up to the amount of its limited license. Defendants respond that the value of the project includes the house contract, including allowances, of

---

2. Our careful scrutiny of the contract reveals only $61,624.00 in allowances, but both sides agree in their respective briefs that the allowances totaled $79,389.00.

**HODGSON CONSTR., INC. v. HOWARD**

[187 N.C. App. 408 (2007)]

$359,620.00; the amount paid pursuant to the foundation contract, $30,492.19; and the value of windows, doors, and floor and roof trusses paid for directly by defendants, $49,671.66. Adding those figures together, defendants contend that the value of the project was $439,783.85, an amount well in excess of plaintiff's limited general contractor's license at the time the house contract was executed and at all relevant times thereafter. Defendants, citing *Builders Supply v. Midyette*, 274 N.C. 264, 162 S.E.2d 507 (1968), concludes that plaintiff may therefore not enforce the house contract at all.

Because defendants alleged that more than one contract was included in a single project—the house—we must first determine the meaning of "value of a *single* project" for purposes of applying N.C. Gen. Stat. § 87-10.[3] In interpreting the language of N.C. Gen. Stat. § 87-10, as with any statute, we presume "the General Assembly intended the words it used to have the meaning they have in ordinary speech. When the plain meaning of a statute is unambiguous, a court should go no further in interpreting the statute." *Nelson v. Battle Forest Friends Meeting*, 335 N.C. 133, 136, 436 S.E.2d 122, 124 (1993) (citation omitted).

Our case law is not entirely clear on the meaning of "value of a single project," but it appears to have the same meaning as "cost of [an] undertaking," the operative language of N.C. Gen. Stat. § 87-1.[4] *See generally Sample v. Morgan*, 311 N.C. 717, 723, 319 S.E.2d 607, 611 (1984); *Spivey and Self v. Highview Farms*, 110 N.C. App. 719, 431 S.E.2d 535, *disc. review denied*, 334 N.C. 623, 435 S.E.2d 342 (1993); *Furniture Mart v. Burns*, 31 N.C. App. 626, 632-33, 230 S.E.2d 609, 612-13 (1976); *see also Webster's Third New Internationl Dictionary* 1813 (1968) (defining "project" as "a planned undertaking"). The cost of an undertaking is generally the value of the construction to the owner upon completion, which is again generally the same as the stated contract price for the building or other construction. *Fulton v. Rice*, 12 N.C. App. 669, 672, 184 S.E.2d 421, 423 (1971).

However, the value of the completed construction or the stated contract price are not necessarily determinative as to the cost of the

3. "[T]he holder of a limited license shall be entitled to act as general contractor for any single project with a value of up to three hundred fifty thousand dollars ($350,000) . . . ." N.C. Gen. Stat. § 87-10(a) (2005).

4. "[A]ny person or firm or corporation who . . . undertakes to . . . construct . . . any building . . . where the cost of the undertaking is thirty thousand dollars ($30,000) or more . . . shall be deemed to be a 'general contractor' engaged in the business of general contracting in the State of North Carolina." N.C. Gen. Stat. § 87-1 (2005).

contractor's undertaking, particularly when the value of the completed construction includes items over which the contractor had no control. *Id.*; *Helms v. Dawkins*, 32 N.C. App. 453, 232 S.E.2d 710 (1977) (reversing summary judgment in homeowners' favor even though the evidence showed that the value of the completed home was more than the limit of the contractor's license, because the written contract was ambiguous as to the degree of control to be exercised by the contractor), *overruled on other grounds, Sample v. Morgan*, 311 N.C. 717, 723, 319 S.E.2d 607, 611 (1984); *Furniture Mart v. Burns*, 31 N.C. App. 626, 632, 230 S.E.2d 609, 612-13 (1976) (reversing summary judgment in favor of owner, even though the value of the completed building totaled $325,000.00 and the contractor's license was limited to $75,000.00, because genuine issues of material fact existed as to the contractor's control over the undertaking where the owner "selected and purchased building material, and directly employed subcontractors"). Furthermore,

> [t]he provisions of a written contract may be modified or waived by a subsequent parol agreement, or by conduct which naturally and justly leads the other party to believe the provisions of the contract are modified or waived, . . . this principle has been sustained even where the instrument provides for any modification of the contract to be in writing.

*Camp v. Leonard*, 133 N.C. App. 554, 562, 515 S.E.2d 909, 914 (1999) (citation, internal brackets and quotation marks omitted).

First, we agree with defendants that the presence of multiple contracts for different phases of a building is not necessarily determinative as to the question of what constitutes a "single" project. To hold otherwise would tend to allow general contractors to circumvent the consumer protections of Chapter 87 by stringing together piecemeal contracts for different phases of the construction of a single building. While we can envision scenarios where the existence of multiple contracts for different phases of the construction of a building might be relevant, the existence of separate contractual documents for the construction of the foundation and the construction of the rest of the house in the case *sub judice* is not determinative.

Assuming all evidence in support of plaintiff's claim is true and drawing all inferences in plaintiff's favor, as we must in reviewing the JNOV granted for defendants, *Bryant*, 313 N.C. at 368-69, 329 S.E.2d at 337-38, the evidence in the instant case tends to show that even before the foundation was started, plaintiff was intended as the gen-

**HODGSON CONSTR., INC. v. HOWARD**

[187 N.C. App. 408 (2007)]

eral contractor for the entire house. The foundation was constructed by plaintiff according to the plan for the entire house, rather than according to a separate foundation plan. The evidence further shows plaintiff started framing the house before he had been fully paid for the foundation and before the contract for construction of the rest of the house had been negotiated or executed. We therefore conclude that the foundation contract must be included with the house contract in determining the value of the single project for the purpose of applying N.C. Gen. Stat. § 87-10.

We next consider the cost of the windows, doors, and frame and roof trusses, which defendants also assert to be part of the single project. Although defendant Shirley Howard testified that plaintiff controlled the purchase and installation of the windows, doors and trusses, the record does not contain a copy of the purported window contract. Furthermore, plaintiff's testimony that he did not control this part of the construction of the house must be taken as true in reviewing the order granting JNOV, and we therefore conclude that the cost of the windows, doors and trusses paid by defendant is not to be included to determine the value of the single project.

Next, we must add the value of the house contract and the value of the foundation contract in order to derive the value of the single project. The value of the foundation contract was disputed. The face of the foundation contract is a cost-plus contract for an estimated cost of $42,410.00 plus 12%, a total of $47,499.20. However, plaintiff testified that defendants sought to modify the contract after it had been initially agreed to, first by reducing the amount of the percentage to 10% before construction had begun, then by hiring the block mason and his crew, without regard to plaintiff, after construction had begun. As a result, plaintiff's evidence was that the value of the foundation work which it controlled was $39,220.18.

The amount of the house contract was also disputed. On its face the value of the house contract is $359,620.00. However, plaintiff's evidence was that, after deducting allowances of $79,389.00, plaintiff controlled only $280,231.00 worth of the work on the house.

Taking all evidence which supports plaintiff's claim as true, and drawing all reasonable inferences in plaintiff's favor, the amounts over which plaintiff had control in the construction of the house were: (1) on the foundation contract, $39,220.18, and (2) on the house contract, $280,231.00. The sum of those numbers, $319,451.18, is the value of the single project for the purpose of applying N.C. Gen. Stat.

IN RE S.D.W. & H.E.W.

[187 N.C. App. 416 (2007)]

§ 87-10(a). This amount was within the $350,000.00 limit of plaintiff's general contractor's license.

Taking all evidence which supports plaintiff's claim as true, and drawing all reasonable inferences in plaintiff's favor, we conclude that plaintiff did not exceed the scope of its limited general contractor's license in the construction of defendants' house. Therefore the trial court erred when it concluded that the question in this case was exclusively a matter of law which entitled defendants to prevail, and set aside the jury verdict in plaintiff's favor. Accordingly, this case is remanded for reinstatement of the jury verdict for plaintiff, and entry of judgment for plaintiff.

Remanded for entry of judgment on the verdict.

Judges ELMORE and STEELMAN concur.