SHERRY S. ALBERT, ADMINISTRATRIX OF THE ESTATE OF DORIS HILL KING; SHERRY S. ALBERT, ADMINISTRATRIX OF THE ESTATE OF FRANK LaRUE KING, Plaintiffs v. J. KIMZIE COWART, WACHOVIA CORPORATION, REGIONS BANK, AM SOUTH INVESTMENT SERVICES, INC., and NEW YORK LIFE INSURANCE and ANNUITY CORPORATION, Defendants

No. COA11-1136

(Filed 3 April 2012)

**1. Fiduciary Relationship—money transferred to joint account—transfer not a gift**

The trial court did not err in denying plaintiff's motions for directed verdict and motion for judgment notwithstanding the verdict as to her claim against defendant Cowart for breach of fiduciary duty. The evidence, when viewed in the light most favorable to Cowart, showed that Cowart was acting in furtherance of plaintiff's deceased Doris King's wishes when he transferred half of the King's money to a joint account with right of survivorship. The transfer was not a gift to Cowart in violation of N.C.G.S. § 32A-14.1.

**2. Unjust Enrichment—money transferred to joint account—transfer not a gift—no breach of fiduciary duty**

The trial court did not err in denying plaintiff's motions for a directed verdict and judgment notwithstanding the verdict as to her claim against defendant Cowart for unjust enrichment. Cowart was unjustly enriched by a gift to himself and a breach of his fiduciary duty as the evidence, when viewed in the light most favorable to Cowart, showed that he did not make a gift to himself or breach his fiduciary duty.

Appeal by plaintiffs from judgment entered 18 January 2011 and Order entered 21 January 2011 by Judge Mark E. Powell in Superior Court, Henderson County. Heard in the Court of Appeals 23 February 2012.

*Prince, Youngblood & Massagee, PLLC, by Boyd B. Massagee, Jr., for plaintiff-appellants.*

*Dameron, Burgin, Parker & Jackson, P.A., by Phillip T. Jackson, for defendant-appellee J. Kimzie Cowart.*

STROUD, Judge.

ALBERT v. COWART

[219 N.C. App. 546 (2012)]

Sherry S. Albert, acting in her capacity as *administratrix* of the estates of Doris Hill King and Frank LaRue King (referred to herein as "plaintiff") appeals from the denial of her motions for a directed verdict at trial, the jury verdict in favor of defendant Cowart, and the order denying her motion for judgment notwithstanding the verdict. For the following reasons, we affirm.

## I. Background

On 28 September 2006, plaintiff filed a complaint against J. Kimzie Cowart ("defendant Cowart") and Wachovia Corporation alleging that Cowart had wrongly transferred funds belonging to Doris Hill King into a joint account at Wachovia Bank and raising claims for breach of fiduciary duty, unjust enrichment, fraud, and conversion. On 5 September 2007, plaintiff filed an amended complaint which included the same alleged claims against defendant Cowart; added New York Life Insurance and Annuity Corporation, Regions Bank, and AMSouth Investment Services, Inc. as defendants; alleged that defendant Cowart had withdrawn the $450,000.00 from the disputed Wachovia account, deposited it into a account at AmSouth Bank[1] , and then purchased a $400,000.00 annuity through New York Life Insurance and Annuity Corporation; and requested the "imposition of constructive trusts" on the disputed accounts.[2] Defendant Cowart filed an answer to plaintiff's amended complaint denying plaintiff's claims.[3] Plaintiff filed a motion for summary judgment against defendant Cowart "to determine that [the disputed] Account was not a survivorship account." Defendant Cowart also moved for summary judgment regarding the status of the disputed account and for the remaining claims against him. In an order entered 31 July 2008, the trial court granted in part defendant Cowart's motion and dismissed plaintiff's claims for constructive fraud and conversion. However, the trial court denied defendant Cowart's motion as to the survivorship account, the breach of fiduciary duty

1. On 15 February 2008, the trial court entered a consent order requiring defendant Regions Bank to freeze the disputed account until it issued a final judgment regarding the distribution of those assets and dismissing claims against defendant AmSouth without prejudice, as it had merged with defendant Regions Bank.

2. Plaintiff's complaint alleged claims for breach of fiduciary duty against defendant Wachovia and plaintiff's amended complaint alleged additional claims against defendant Wachovia, including negligence, and breach of debtor/creditor relationship. Defendant Wachovia Bank is not a party to this appeal.

3. Defendant Cowart also raised a cross-claim against defendant Wachovia Bank, which is not at issue in this appeal.

claim, and the unjust enrichment claim; and granted plaintiff's motion and held that the disputed account was not a survivorship account. The trial court certified the judgment for immediate appeal pursuant to Rule 54. Defendant Cowart appealed from this order.

This Court in *Albert v. Cowart*, 200 N.C. App. 57, 65, 682 S.E.2d 773, 779, *disc. review denied and dismissed as moot*, 363 N.C. 744, 687 S.E.2d 688 (2009) reversed in part the trial court's order. This Court explained that

> [u]nder North Carolina General Statutes, section 53-146.1, "[a]ny two or more persons may establish a deposit account or accounts by written contract. The deposit account and any balance thereof shall be held for them as joint tenants, with or without right of survivorship, as the contract shall provide . . . ." N.C. Gen. Stat. § 53-146.1(a) (2007). "Parties who wish to create a right of survivorship applicable to joint bank accounts must comply with the requirements of G.S. § 41-2.1(a)[.]" *In re Estate of Heffner*, 99 N.C. App. 327, 328, 392 S.E.2d 770, 771 (1990). Under General Statutes, section 41-2.1, a right of survivorship in banking deposits may be created by written agreement:
>
> > (a) A deposit account may be established with a banking institution in the names of two or more persons, payable to either or the survivor or survivors . . . when both or all parties have signed a written agreement, either on the signature card or by separate instrument, expressly providing for the right of survivorship.
>
> N.C. Gen. Stat. § 41-2.1(a) (2007).

*Id.* at 63, 682 S.E.2d at 778. This Court noted that both Doris King and defendant Cowart had previously signed "Wachovia Customer Access Agreement[s]" which were "designed to eliminate most subsequent signature cards and authorizations when opening future accounts" and specifically, those agreements elected "to create the Right of Survivorship for any joint account." *Id.* at 64, 682 S.E.2d at 778-79. This Court further noted that on 7 September 2005, both Doris King and defendant Cowart signed a statement to open a joint account in their names and "on the authority of the aforementioned statement and authorizations on file, Wachovia created Account 588 in the names of Doris H. King and Kimzie Cowart." *Id.* at 65, 682 S.E.2d at 779. In reversing in part the trial court's order and holding "that Account 588 incorporated a right of survivorship[,]" this Court noted

the clear intent of both Doris King and Cowart's individual CAA forms specifically authorizing, pursuant to N.C. Gen. Stat. § 53-146.1, the incorporation of a right of survivorship to any joint account opened, as well as the subsequent agreement between Doris King and Cowart to enter into a joint checking account.

*Id.* This Court did not rule on any of the trial court's other determinations in the summary judgment order. *Id.* at 65-66, 682 S.E.2d at 779-80. The remaining claims were tried at the 9 November 2010 Civil Session of Superior Court, Henderson County.

Evidence presented at trial tended to show that Doris and Frank King were residents of Henderson County, North Carolina. In April of 2005, Doris King was diagnosed with lymphoma and her husband Frank King was suffering from Alzheimer's disease. Plaintiff Sherry Albert, Frank King's daughter and Doris's stepdaughter, testified that she traveled from Florida to visit the Kings two or three times a year and classified their relationship as a "very healthy relationship." She did not discuss money with the Kings, and Doris did not tell Sherry that she had cancer. Plaintiff Sherry testified that Doris's will left her estate to her husband Frank King but if Frank predeceased Doris, Doris's estate would go to Sherry. Frank King's will also stated that Sherry would get his entire estate if Doris predeceased Frank.

In September of 2005, Doris became ill and was admitted to the hospital. Doris's treating physician Dr. Phillip Sellers became concerned for Doris and Frank King as

> [Doris] had not made any arrangements for care of her husband, Frank, who was increasingly demented, and it was obvious that Doris was going to die and that, I felt that some arrangements needed to be made to be sure that he was cared for after she died. And I pushed her to try to get in touch with somebody, she was very reluctant to do anything or to face in a realistic kind of way what her situation was. And so I pushed her and that's when she gave me Kimzie [Cowart's] name.

Dr. Seller's stated that Doris indicated that defendant Cowart was "a person she trusted[.]" Defendant Cowart is the biological nephew of Frank King and at the time lived in Florida.

Defendant Cowart testified that he was close to Frank and Doris King, as they were his last living aunt and uncle, and in 2005, he had visited the Kings about once a month. During 2005, he observed a

decline in Doris's health and thought that she had cancer. He also noticed that Frank's health had also declined, and he thought Frank had Alzheimer's disease. In September of 2005, defendant Cowart traveled from Florida to Henderson County and discovered that Doris King had been admitted to the hospital. He received a note from Dr. Sellers indicating that he wanted to talk to him. Once defendant Cowart called Dr. Sellers, he was told that the Kings were ill and needed some help. Defendant Cowart met with Doris in the hospital and she requested that he draw up a power of attorney and a living will. Defendant Cowart had an attorney draw up the documents and he returned to the hospital. He found a notary and two witnesses and Doris King signed the documents, including the power of attorney which authorized defendant Cowart to, *inter alia*, "[t]o transact [Doris's] banking business" including endorsing checks, drawing checks, and making deposits. Doris told defendant Cowart that she wanted to move to a nursing facility and she requested that he fill out the necessary paperwork. After defendant Cowart followed her directions, Doris was admitted into the nursing home the next day. Defendant Cowart again met with Doris. From that meeting, he went to Wachovia Bank and attempted to open a joint account with Doris to pay for Frank and Doris's medical bills. Defendant Cowart was told by a bank employee that the power of attorney did not allow him to open a joint account with Doris. The bank gave defendant Cowart a form for Doris and defendant Cowart to sign to open the account. Defendant Cowart returned to the hospital and explained the situation to Doris and Doris signed the document. This document dated "09/07/2005" stated the following: "Please open a checking account in the name of Doris H. King and Kimzie Cowart in the amount of $100,000. Please send signature for me to sign." Defendant Cowart testified that he did not know who had filled in the blank with the figure $100,000. Defendant Cowart returned with this documentation, and Wachovia Bank opened a joint account with Doris and defendant Cowart ("Account 588") and $100,110.44 was deposited in that account. Defendant Cowart had another meeting with Doris. As a result of this meeting, defendant called plaintiff Sherry Albert and told her she needed to come and take care of Frank King. Defendant then went to Wachovia Bank again and transferred half of the King's money from the King's joint accounts into Account 588. Defendant Cowart explained that he left half of the King's money in the King's joint accounts because he wanted money in those accounts to provide for care for Frank King. Since defendant Cowart had been in North Carolina for a week, he had to return to Florida the next day to

work. While driving home to Florida, defendant Cowart heard that Doris had died. Doris King died on 11 September 2005. Defendant Cowart said that he had made arrangements for Doris's funeral prior to Doris's death but was unable to come back and attend the funeral because of work. He testified that he paid for Doris's funeral expenses in the amount of $5,519.80. Defendant Cowart testified that Doris told defendant Cowart that she did not want plaintiff Sherry to know that she was in bad health. He also testified that he did not "take any action on behalf of Doris King without her knowledge and consent[,]" and he transferred the money into Account 588 while acting as Doris King's attorney-in-fact.

Candice Dublin, the branch manager at the Wachovia Bank in Henderson County, testified that on 7 September 2005 defendant Cowart came into the bank and told her that Doris King had been in the hospital, she had terminal cancer, she was going to move to a nursing facility, and that he came in to help Doris pay her bills and funeral arrangements. Defendant Cowart showed Ms. Dublin a power of attorney signed by Doris King, notarized, and dated 7 September 2005; he requested to open a joint account with Doris King. Ms. Dublin informed defendant Cowart that she could not open up the joint account with the power of attorney and she drew up a written statement for both Doris and defendant Cowart to sign acknowledging their request to open up the joint account. Defendant Cowart returned to the bank with the written statement signed by both Doris King and defendant Cowart and Ms. Dublin opened up the joint account ("Account 588"). Defendant Cowart acting as Doris's attorney in fact had Ms. Dublin withdraw from Frank and Doris King's certificate of deposit ("CD") account $100,110.41 and deposited those funds into Account 588. On 9 September 2005, defendant Cowart acting as Doris's attorney in fact had Ms. Dublin withdraw from the Kings' CD accounts and deposit in Account 588, $54,950.45, $197,486.42, and $99,050.69 Another $9,000 was moved by check endorsed by defendant Cowart from the King's joint account and deposited into Account 588, for a total of $460,597.97. A check dated 15 September 2005 was written for $5,519.80 from Account 588 and on September 16 another check was written for $450,000.00 payable to "AM South." Ms. Dublin further stated that in 2003, Doris King had signed a signature card acknowledging that any future joint accounts opened by her would be right of survivorship accounts; instructions affecting any of Doris's joint accounts could be given by any joint owner of the account; and these instructions could be given orally or in writing. Ms. Dublin testified that because defendant Cowart had a

valid power of attorney she could not refuse to make his banking transactions. Ms. Dublin further testified that she had known Doris King since 1996 and Doris had told her that her step-daughter plaintiff Sherry never came to visit her father Frank King. Also, Doris asked Ms. Dublin to be the executor to her estate because she "felt that [plaintiff Sherry] would take the money for herself, put Mr. King in a nursing home, and never go see him."

Patricia Harvey testified that she knew Doris King and Doris had told her that plaintiff Sherry was a "gold digger[,]" and she never came to see them, and she never called "unless she wanted something" and Doris was hurt by this. Ms. Harvey said that Doris did not want plaintiff Sherry Albert to get anything from her and Doris told Ms. Harvey that she "would give it to a dog before she would give it to Sherry."

Elizabeth Ellington, another friend of Doris King, also testified that plaintiff Sherry was never around that much when Doris needed her. However, defendant Cowart would assist the Kings if they needed something or needed someone to drive them around. Ms. Ellington overheard Doris telling defendant Cowart that she wanted to move her money so that Sherry would not inherit her share of the Kings' money.

At the close of all evidence, plaintiff moved for a directed verdict as to the claims of breach of fiduciary duty and unjust enrichment against defendant Cowart. Plaintiff's motions were denied. On 17 November 2010, the jury returned a verdict in favor of defendant Cowart on the issues of breach of fiduciary duty and unjust enrichment. The trial court subsequently issued a judgment in favor of defendant Cowart. Plaintiff subsequently moved for a judgment notwithstanding the verdict ("JNOV") and for a new trial, which, by order entered 21 January 2011, was denied. Plaintiff filed timely notice of appeal from the denial of her motion for a directed verdict, the jury verdict, and the order denying her motion for judgment notwithstanding the verdict.

## II.  Standard of Review

The standard of review of the denial of a motion for a directed verdict and of the denial of a motion for JNOV are identical. We must determine whether, upon examination of all the evidence in the light most favorable to the non-moving party, and that party being given the benefit of every reasonable inference drawn therefrom and resolving all conflicts of any evidence in

ALBERT v. COWART

[219 N.C. App. 546 (2012)]

favor of the non-movant, the evidence is sufficient to be submitted to the jury.

A motion for either a directed verdict or JNOV should be denied if there is more than a scintilla of evidence supporting each element of the non-movant's claim. A scintilla of evidence is defined as very slight evidence.

*Springs v. City of Charlotte*, ___ N.C. App. ___, ___, 704 S.E.2d 319, 322-23 (2011) (citations and quotation marks omitted). "This Court has also held that a motion for judgment notwithstanding the verdict is cautiously and sparingly granted." *Hodgson Constr., Inc. v. Howard*, 187 N.C. App. 408, 411, 654 S.E.2d 7, 10 (2007) (citation and quotation marks omitted).

### III. Breach of Fiduciary Duty

[1] Plaintiff first contends that the trial court erred in denying her motions for a directed verdict and motion for judgment nothwithstanding the verdict ("JNOV") as to her claim against defendant Cowart for breach of fiduciary duty. Plaintiff argues that the transfer of $460,598.00 from the Kings' joint accounts into Account 588 by defendant Cowart was for his own benefit and amounted to a gift to himself, as he opened Account 588 as a right of survivorship account with the intention that the money go to him after Doris King died and Doris received no benefit, outside of the payment of her funeral expenses, from the transfer of the money to Account 588. Plaintiff further argues that defendant Cowart's transfer of money from the Kings' joint accounts to Account 588 amounted to a breached his fiduciary duty as Doris King's attorney in fact as he acted for his own benefit over that of his principal, Doris King. Plaintiff also argues that the evidence shows that defendant Cowart did not follow Doris King's desire as the principal because she requested that defendant Cowart take care of her husband Frank after her death but instead defendant Cowart transferred the money to an annuity for his own benefit. Plaintiff concludes that defendant Cowart's gift while acting as an attorney-in-fact of his principal's money to himself [was] an act beyond his authority and a breach of his fiduciary duty" and as a direct and proximate cause of this breach plaintiff suffered damages in excess of $450,000.00 "and [is] entitled to judgment against Cowart for Cowart's breach of fiduciary duty notwithstanding the verdict."[4]

---

4. Plaintiff, citing portions of defendant Cowart's *voir dire* testimony, also argues that defendant Cowart's testimony that Doris did not want plaintiff Sherry to have any of her money "lacks credibility[.]" However, as this testimony was made as an offer of proof outside of the presence of the jury, we need not address these arguments.

Defendant Cowart counters that plaintiff failed to meet her burden for the JNOV motion to show that he made a gift to himself in breach of his fiduciary duty as Doris King's attorney in fact. Defendant argues that Doris King signed the power of attorney; Account 588 was created as a joint account with the right of survivorship by Doris King and him signing the written authorization form; pursuant to Doris King's wishes and the power of attorney, defendant Cowart transferred funds to Account 588; under North Carolina law these transfers were not a gift; and following Doris King's death, defendant "became the owner of that account—not by a gift to himself—but by operation of law." (emphasis omitted). Defendant concludes that because the evidence shows that he did not make a gift to himself, plaintiffs failed to meet their burden to show that he breached his fiduciary duty, and the denial of their motions for directed verdict and JNOV should be affirmed.

"For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citations omitted). A fiduciary relationship has been defined as

> one in which "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . . , [and] 'it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and *resulting domination and influence on the other.*' "

*Id.* at 651, 548 S.E.2d at 707-08 (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931) (emphasis in original)). The relationship created by a power of attorney between the principal and the attorney-in-fact is fiduciary in nature, *see* N.C. Gen. Stat. § 32A-8 (2009), and this

> fiduciary relationship implies that the principal has placed trust or confidence in the agent, and the agent or employee is bound to the exercise of the utmost good faith, loyalty, and honesty toward his principal or employer. Thus, an attorney-in-fact is presumed to act in the best interests of the principal.

*Estate of Graham v. Morrison*, 168 N.C. App. 63, 74, 607 S.E.2d 295, 303 (2005) (citations and quotation omitted). "[F]iduciaries must act in good faith. They can never paramount their personal interest over

ALBERT v. COWART

[219 N.C. App. 546 (2012)]

the interest of those for whom they have assumed to act." *Miller v. McLean*, 252 N.C. 171, 174, 113 S.E.2d 359, 362 (1960) (citations omitted).

N.C. Gen. Stat. § 32A-14.1 (2009), in pertinent part, addresses gifts made by the attorney-in-fact:

> (a)  Except as provided in subsection (b) of this section, if any power of attorney authorizes an attorney-in-fact to do, exe-cute, or perform any act that the principal might or could do or evidences the principal's intent to give the attorney-in-fact full power to handle the principal's affairs or deal with the princi-pal's property, the attorney-in-fact shall have the power and authority to make *gifts* in any amount of any of the principal's property to any individual or to any organization described in sections 170(c) and 2522(a) of the Internal Revenue Code or corresponding future provisions of federal tax law, or both, in accordance with the principal's personal history of making or joining in the making of lifetime gifts. As used in this subsec-tion, "Internal Revenue Code" means the "Code" as defined in G.S. 105-228.90.
>
> (b)  Except as provided in subsection (c) of this section, or unless gifts are expressly authorized by the power of attorney, a power described in subsection (a) of this section may not be exercised by the attorney-in-fact in favor of the attorney-in-fact or the estate, creditors, or the creditors of the estate of the attorney-in-fact.

(Emphasis added.) As plaintiff is arguing that defendant Cowart breached his fiduciary duty by making a gift to himself in violation of N.C. Gen. Stat. § 32A-14.1(b), we note that

> [t]o make a gift *inter vivos* there must be an intention to give coupled with a delivery of, and loss of dominion over, the prop-erty given, on the part of the donor. Donor must divest himself of all right and title to, and control of, the gift. Such gift cannot be made to take place in the future. The transaction must show a completely executed transfer to the donee of the present right to the property and the possession.

*Smith v. Smith*, 255 N.C. 152, 155, 120 S.E.2d 575, 578 (1961) (cita-tions omitted). This Court has further stated that "a deposit by one party into an account in the names of both, standing alone, does not constitute a gift to the other." *Hutchins v. Dowell*, 138 N.C. App. 673,

678, 531 S.E.2d 900, 903 (2000) (citing *Smith*, 255 N.C. at 155, 120 S.E.2d at 578).

At trial, defendant argued that he did not breach his fiduciary duty as he and Doris jointly agreed to open Account 588, Doris directed him to make the transfers to Account 588, and the funds in Account 588 became his only by operation of law after Doris's death. We note that there was "more than a scintilla of evidence supporting" defendant Cowart's defense. *See Springs*, ___ N.C. App. at ___, 704 S.E.2d at 322-23. The durable power of attorney signed by Doris King on 7 September 2005 gave defendant Cowart as her attorney in fact the power and authority to

> 3. Transact all my banking business at such bank or banks as I may hereafter designate; to endorse all checks, notes, drafts and bills of exchange for collection and deposit; and to deposit the same in any such bank; to draw checks on my account in any bank or banks and to deliver the same; and to sign, execute and deliver all promissory notes[.]

Plaintiff makes no challenge to the creation of the power of attorney. As noted in our prior opinion and by Candace Dublin in her testimony, Account 588 was opened as a joint account with a right of survivorship pursuant to the Customer Access Agreements and the documentation signed by both Doris King and defendant Cowart. *See Albert*, 200 N.C. App. at 64-65, 682 S.E.2d at 778-79.

The evidence when viewed in the light most favorable to defendant Coward shows that defendant Cowart was acting in furtherance of Doris King's wishes when he transferred half of the King's money to Account 588. Multiple witnesses testified that Doris King did not have a good relationship with plaintiff Sherry Albert and did not want her to get any of her share of the Kings' money. However, plaintiff Sherry testified that according to the Kings' wills she would inherit all of their assets if they predeceased her. Plaintiff Sherry Albert admitted that she did not know that Doris had cancer and Doris told defendant Cowart not to tell Sherry that she was ill. Also testimony was presented that Doris trusted defendant Cowart. Defendant Cowart testified that he did not "take any action on behalf of Doris King without her knowledge and consent[,]" and transferred the money while acting as Doris's attorney-in-fact. Accordingly, the evidence, when viewed in the light most favorable to defendant Cowart, tended to show that Doris directed defendant Cowart to move her share of the Kings' assets into Account 588 because she did not want plaintiff

Sherry to get her share of the money. Defendant Cowart did not move any of the money out of Account 588 until after Doris King's death, when by operation of law by right of survivorship the funds in Account 588 became the property of defendant Cowart. *See* N.C. Gen. Stat. § 53-146.1 (2009) (stating that "[f]unds in a joint account established with right of survivorship shall belong to the surviving joint tenant or tenants upon the death of a joint tenant[.]"). Defendant Cowart's deposit of funds into Account 588 pursuant to the power of attorney did not amount to a gift to himself because those deposits were made when Doris was alive and a joint tenant of account 588. *See Hutchins*, 138 N.C. App. at 678, 531 S.E.2d at 903. As a joint tenant, Doris King still retained control of the funds pursuant to the terms of the joint account, *see Smith*, 255 N.C. at 155, 120 S.E.2d at 578, and therefore, the transfer was not a gift to defendant Cowart in violation of N.C. Gen. Stat. § 32A-14.1.

Accordingly, the trial court properly denied plaintiff's motions for a directed verdict and JNOV as to the claim of breach of fiduciary duty.

### IV. Unjust Enrichment

[2] Plaintiff next contends that the trial court erred in denying her motions for a directed verdict and JNOV as to her claim against defendant Cowart for unjust enrichment. Plaintiff argues that "[t]he evidence showed that Cowart was unjustly enriched by the funds he withdrew from Account-588 and used to open accounts solely in his favor[;]" it is undisputed that Doris made no gift of any of the funds at issue to Cowart; and "Cowart gifted the money to himself which he is not entitled to do" and "it is inequitable for Cowart to retain the $450,000.00 acquired by him through a breach of his fiduciary duty or other inequitably [sic]." Defendant Cowart counters that the trial court correctly denied plaintiff's motion for directed verdict and JNOV as to her claim for unjust enrichment. We have stated that

> [u]njust enrichment is a legal term characterizing the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself [or herself] at the expense of another. . . [.]

*Adams v. Moore*, 96 N.C. App. 359, 362, 385 S.E.2d 799, 801 (1989), *disc. review denied*, 326 N.C. 46, 389 S.E.2d 83 (1990). Plaintiff's

argument is that defendant Cowart was unjustly enriched by a gift to himself and a breach of his fiduciary duty. As discussed above, the evidence when viewed in the light most favorable to defendant Cowart shows that he did not make a gift to himself or breach his fiduciary duty, as Doris and defendant Cowart jointly opened Account 588, the deposits into Account 588 were directed by Doris, and the funds in Account 588 became his property by operation of law after Doris's death. Therefore, we overrule plaintiff's argument as to unjust enrichment. Accordingly, we affirm the trial court's denial of plaintiff's motions for directed verdict and JNOV.[5]

AFFIRM.

Judges ELMORE and STEELMAN concur.

---

5. As the ruling denying plaintiff motion for a directed verdict and the order denying plaintiff's motion for JNOV were affirmed, we need not address defendant Cowart's argument for an alternative basis in law to support the judgment pursuant to N.C.R. App. P. 28(c).